**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4020-14T4

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

       Plaintiff-Respondent,

v.

S.W.,

       Defendant,

and

R.W.,

       Defendant-Appellant.

_____

IN THE MATTER OF
AL.W., AN.W., M.W., and N.W.,

       Minors.

_____

<table>
<tr><td><b>APPROVED FOR PUBLICATION</b></td></tr>
<tr><td><b>January 10, 2017</b></td></tr>
<tr><td><b>APPELLATE DIVISION</b></td></tr>
</table>

Submitted November 9, 2016 — Decided January 10, 2017

Before Judges Messano, Guadagno, and Suter.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FN-08-0052-13.

Joseph E. Krakora, Public Defender, attorney for appellant (Laura M. Kalik, Designated Counsel, on the briefs).

Christopher S. Porrino, Attorney General, attorney for respondent (Lisa Puglisi, Assistant Attorney General, of counsel; Renard L. Scott, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Danielle Ruiz, Designated Counsel, on the brief).

The opinion of the court was delivered by

GUADAGNO, J.A.D.

Defendant R.W. appeals from a Family Part order finding he abused or neglected four of his children. We are again asked to review a threadbare record after the trial judge permitted the parties to proceed "on the papers" by submitting reports prepared by Division of Child Protection and Permanency (Division) caseworkers, rather than taking testimony and making credibility findings. This is the third time in the last four months we have addressed the use of this truncated practice at fact-finding hearings in a published opinion.

In New Jersey Division of Child Protection and Permanency v. S.G., ____ N.J. Super. ____ (App. Div. 2016), the defendant appealed an order that she abused or neglected her two-year-old daughter. The judge allowed the parties to forgo the presentation of witnesses and decided disputed material facts based solely on redacted copies of a police report and investigation summaries prepared by the Division. Id. at (slip

op. at 3). We vacated the order and remanded for a testimonial fact-finding hearing, concluding that testimony was required when there are unresolved and disputed details regarding facts of consequence to the determination of an abuse or neglect finding. <u>Id.</u> at (slip op. at 16).

In <u>New Jersey Division of Child Protection and Permanency v. J.D.</u>, ____ <u>N.J. Super.</u> ____ (App. Div. 2016), the defendant through his counsel agreed to a trial on the papers through the admission into evidence of redacted documents. <u>Id.</u> at (slip op. at 14). We affirmed the order that the defendant neglected his son because the evidence was compelling and undisputed, but we cautioned trial judges about the dangers inherent in adjudicating contested trials on the papers. <u>Id.</u> at (slip op. at 22).

Here, the evidence of neglect is neither compelling nor undisputed. We vacate the order finding defendant neglected his children and again caution our trial judges: Where there are contested facts in a Title Nine fact-finding hearing, forgoing testimony in favor of the submission of documents serves neither the defendant, who may be deprived an opportunity to present a meaningful defense, nor the Division, which may be limited in admitting all available proofs of a defendant's culpability. In such cases, the trial judge, who possesses plenary authority

3                                                    A-4020-14T4

over the conduct of hearings, must reject a proposal for a trial on the papers and insist on testimony, even if the parties have agreed to the procedure.

## I.

From the record before us, we gather the following information. Defendants R.W. and S.W. (Sophia)[1] have at least seven children together: M.W. (Martin), age five at the time of the incident; N.W. (Norbert), age six; An.W. (Austin), age fifteen; Al.W. (Alison), age sixteen; R.W., Jr. (Junior), age twenty; J.W. (Julie), age twenty-one; and their oldest daughter, Sh.W. (Sherry).

The Division's history with this family dates back to April 1997 when it received a referral that Sophia had run over Junior with her car. Neglect was substantiated as to Sophia but there is no indication that defendant was involved in the incident. In July 1997, the Division received a report of neglect for inadequate supervision. Defendant and Sophia admitted to leaving their children unattended at home and both were substantiated for neglect. Additional allegations of neglect in 1997, 2004, 2010, and 2011 were deemed unfounded or unsubstantiated.

_____

[1] We employ pseudonyms to protect the privacy of the minors and for clarity.

By 2012, defendant and Sophia had separated. Sophia moved to Ocean City to live with her mother and defendant lived in a duplex in Paulsboro. Sophia agreed to defendant having custody of Martin, Norbert, Austin, and Alison.

Even though defendant had custody of the four children, he was arrested on August 20, 2012, for failure to pay child support. Following defendant's arrest, Junior brought the children to Sophia's home. Defendant was released the same day and contacted Sophia seeking to have the children returned to him; Martin and Norbert returned, but Alison remained with Sophia.

On August 22, 2012, defendant's oldest daughter Sherry, contacted the Division and expressed concern for her younger siblings. Sherry reported that parts of defendant's home were without electricity and she believed defendant was using drugs. A caseworker was assigned to investigate. Sophia told the caseworker that after defendant's arrest, the children came to Ocean City to stay with her, but she allowed Martin and Norbert to return to defendant. Sophia told the caseworker that defendant had used drugs in the past, but she left the children with him because she believed he was doing better.

The caseworker went to defendant's home and spoke with Sherry who confirmed defendant was arrested two days earlier for

failing to pay child support. Sherry and Junior cared for the children in defendant's absence. The caseworker spoke with fifteen-year-old Austin who told her that after defendant's arrest, Martin and Norbert were taken to Sophia's house. After defendant's release, Norbert and Martin returned to defendant's home, but Alison stayed with Sophia. Austin said there was electricity on the second floor of his father's home, and everyone slept upstairs. Austin told the caseworker he feels safe with his father and would like to stay with him.

Six-year-old Norbert told the caseworker his mother left him with defendant and Junior. His brother Austin helps him when he takes a bath, defendant and Sherry cook for him, and Junior takes him to school and to the doctors. The caseworker found that Norbert appeared healthy and well groomed.

Sherry told the caseworker that defendant had been arrested for failure to pay child support and suspected he may be using drugs, although she has never witnessed him doing so. After his release, defendant sent Sherry a text message stating he was "going to get his life better," but she did not know what that meant.

Junior interrupted the interview and when Sherry told him that the Division had been called again, he became visibly upset and stated "[i]f I find out who . . . called DYFS again, I am

going to punch them in the face[.]"  Sherry went inside to speak with Junior and to prepare dinner for the children.

After Junior calmed down, he told the caseworker he considers his brothers his "children" and ensures that they eat and bathe every day.  He also watches over them when defendant leaves the home.  After defendant's arrest, Junior took his younger siblings to his mother's house.  Defendant was released the same day and Norbert and Martin returned the following day; Alison remained with her mother in Ocean City.  Junior did not know if his father was using drugs, but told the caseworker that he would not leave the children alone with defendant if he appeared to be under the influence.  Junior said he does not use drugs or alcohol, and the caseworker noted that he appeared coherent and cooperative during the interview.  Junior denied physically disciplining his younger siblings, and told the caseworker that when the children misbehave he either makes them sit on their bed and think about what they did, or takes away their video game.  Junior explained that the electricity to the lower part of the duplex home was in Julie's name, and it had been shut off.  The family runs extension cords from the second floor to the first floor in order to provide electricity for the refrigerator and washing machine.

After examining the home, Sherry and Austin agreed to clean up and remove a couch that smelled of urine. In her report, the caseworker stated that the children were safe in the care of Sherry and Junior.

Later that day, defendant came home and two caseworkers returned to interview him. Defendant denied using drugs that day, but admitted to using crack cocaine two days earlier after he was released from jail. When defendant was arrested he left the children in the care of Sherry and Junior. He admitted he used cocaine in the past in the backyard while the children were asleep, but denied ever using drugs in the home or around the children.

Defendant told the caseworkers he was receiving drug treatment and was scheduled for a drug screening on August 15, 2012, but had no way to get there. Defendant said he was prescribed Percocet for a back and leg injury, however he was unable to show proof of his prescription. Defendant became emotional and told the caseworkers that Sophia left him with the children, and did not help him with caring for them or paying the bills. Defendant was two or three months behind on rent for the duplex.

Defendant and Sophia agreed to a safety protection plan whereby Sherry would supervise defendant's contact with the

children. Defendant agreed to submit to drug testing and on the following day, he tested positive for cocaine and opiates. Because of defendant's positive drug test and the Division's discovery that police had found baggies containing a white powdery substance during the execution of a search warrant at defendant's home on May 11, 2012, a revised safety protection plan was executed requiring that Sherry take custody of Austin, Martin, and Norbert and designate an alternate caregiver when she was at work. Sherry agreed to care for the children until August 31, 2012. On August 30, 2012, the Division executed an emergency removal of Martin, Norbert, Austin, and Alison and placed them in foster care as Sherry was no longer willing to care for them. In June 2013, the children were returned to Sophia, but in August 2013, she informed the Division that she was homeless and the Division again placed the children in foster care.

On June 17, 2013, defendant appeared for a compliance review. The judge entered an order that day scheduling a fact-finding hearing for September 12, 2013. For reasons not apparent on the record before us, that hearing was advanced to September 11, 2013. When the case was called, defendant's counsel told the judge that defendant could not be there because he was attempting to resolve an issue with his Medicaid

coverage. Counsel confirmed the fact-finding had been scheduled for September 12, 2013, but did not seek to adjourn the hearing even after the judge suggested that if defendant had been present, "there might have been more basis to negotiate." Rather, counsel agreed to proceed with the hearing in defendant's absence and to "just move the exhibits in."

The Division then submitted four exhibits: P-1, an investigative summary dated August 22, 2012; P-2, two screening summaries dated August 22 and October 18, 2012; P-3, two safety plans dated August 23 and August 28, 2012; and P-4, contact sheets dated August 22 and 23, 2012.

Both caseworker Marangelly Ortiz, and permanency worker Ennis Thompson were present in court and presumably available to testify. Even though defendant was not present, the judge offered defendant's counsel the opportunity to cross-examine Ortiz on her observations as recorded in the documents; counsel declined.

When defendant's counsel learned that defendant had a prior substantiation, presumably for the July 1997 inadequate supervision incident, he appeared to trivialize the effect of a second finding of abuse or neglect: "Yeah, my general point is, . . . he's in the [Child Abuse] Registry now, you know, being in the Registry twice is really not - -."

On November 19, 2013, the court entered an order finding by a preponderance of the evidence that defendant

> while responsible for the care of four of his minor children, ages 16, 15, 6 & 5, used crack cocaine, highly debilitating, addictive & expensive on & between August 20 & 21 and on August 23 testing positive & during this period also using prescription opiates for pain and drinking to excess, (alcohol) all increasing the risk, rendering him unable to plan & care for the children in a minimally adequate fashion placing the children at risk of harm.

The order states that the judge's reasons supporting this order were stated on the record, however there is no written decision or transcript indicating the judge placed her reasons supporting this order on the record.

## II.

On appeal, defendant argues that there was insufficient evidence to support the finding; the children were not at substantial risk of harm or facing imminent danger; the trial judge impermissibly expanded the legal definition of the minimum degree of care as set forth in N.J.S.A. 9:9-8.21(c)(4)(b); and the informality of the proceedings violated the principles set forth in New Jersey Division of Youth and Family Services v. J.Y., 352 N.J. Super. 245 (App. Div. 2002), thus denying defendant due process.

N.J.S.A. 9:6-8.21(c) defines an abused or neglected child as

> a child less than 18 years of age whose parent or guardian, as herein defined . . . (2) creates or allows to be created a substantial or ongoing risk of physical injury to such child by other than accidental means which would be likely to cause death or serious or protracted disfigurement, or protracted loss or impairment of the function of any bodily organ; . . . (4) or a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian, as herein defined, to exercise a minimum degree of care (a) in supplying the child with adequate food, clothing, shelter, education, medical or surgical care though financially able to do so or though offered financial or other reasonable means to do so, or (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof[.]

The Division "must prove that the child is 'abused or neglected' by a preponderance of the evidence, and only through the admission of 'competent, material and relevant evidence.'" N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 32 (2011) (quoting N.J.S.A. 9:6-8.46(b)).

Our standard of review is well-settled. We are bound by the family court's factual findings if supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. I.H.C.,

415 N.J. Super. 551, 577-78 (App. Div. 2010). As the judge here made no factual findings, we review the record de novo.

Some facts are not in dispute: Defendant had custody of the four youngest children after he and Sophia separated and she moved to Ocean City; defendant received strong support from his older children, Junior and Julie, who cared for their younger siblings in his absence; when defendant was arrested on August 20, 2012, Junior took the children to Sophia's home; after defendant's release, Martin and Norbert were returned to his care; and Junior and Julie continued to assist defendant with the care of the children at the home.

Significantly, there is not even a suggestion in the present record, let alone proof by a preponderance, that any of the children suffered harm during the three-day period addressed by the November 19, 2013 order. As there is no evidence of actual harm, our focus shifts to whether there is a threat of harm, and we look to determine whether the Division has proven "imminent danger or a substantial risk of harm to a child by a preponderance of the evidence." N.J. Dep't of Children & Families v. A.L., 213 N.J. 1, 23 (2013) (citing N.J.S.A. 9:6-8.21(c)(4)(b), -8.46(b)).

As the judge did not provide an oral or written opinion, we have only the brief handwritten statement found in her order to

determine the basis for her conclusion. The order indicates that the judge's conclusion that defendant placed the children at a risk of harm was based on her finding that defendant used crack cocaine between August 20 and 21; tested positive for drugs on August 23; used prescription opiates for pain; and drank alcohol to excess.

As to defendant's use of opiates, the judge never acknowledged that a Division caseworker confirmed that defendant had been a patient of a local orthopedist since 2006, had last been seen by a physician there on August 2, 2012, had been prescribed Percocet, and there was no concern by his physician that defendant was abusing his medication. We are at a loss to understand why the judge referenced defendant's prescribed use of Percocet as a basis for her finding of abuse or neglect.

Similarly, there is no proof in the record that defendant was impaired by his use of alcohol. Indeed, a caseworker indicated that, when she interviewed defendant on August 29, 2012, he did _not_ appear to be under the influence. The judge's conclusion that defendant drank alcohol to excess is untethered to any evidence in the record.[2]

---

[2] On August 29, 2012, a caseworker observed nine empty beer bottles outside of defendant's house, but defendant explained that he consumed the beer with other friends. Nothing in the record contradicts that assertion.

A-4020-14T4

Defendant's admitted relapse and use of cocaine, even if the children had been under his care, is not, standing alone, sufficient to support a finding of abuse or neglect as the trial judge appeared to find. N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 331-32 (App. Div. 2011). In V.T., the trial judge found that a father neglected his child based on the father's refusal to attend substance abuse treatment, and two positive drug tests for cocaine and marijuana during supervised visits. Id. at 325-27. As in this case, the Division presented no evidence of actual harm and no expert evidence that the father posed a risk during visits with the child. Id. at 331.

We reversed, finding that "[a]ddiction is not easy to successfully remediate; a failure to successfully defeat drug addiction does not automatically equate to child abuse or neglect." Ibid. We noted that even though drug use is illegal, "Title 9 is not intended to extend to all parents who imbibe illegal substances at any time. . . . [N]ot all instances of drug ingestion by a parent will serve to substantiate a finding of abuse or neglect." Id. at 331-32.

After defendant's arrest, the four children in his custody were cared for by their older siblings Junior and Julie and then taken that day to Sophia's house. There is no proof that

defendant's relapse and use of cocaine after his release following his arrest exposed any of these children to imminent danger or a substantial risk of harm.

### III.

We also find no evidence that defendant knowingly waived his right to a fact-finding hearing, and agreed to have the judge decide whether he abused or neglected his children solely based on her review of reports prepared by Division caseworkers.

The fact-finding hearing is a critical element of the abuse and neglect process. J.Y., supra, 352 N.J. Super. at 264. The judge, as the fact-finder, must "determine whether the child is an abused or neglected child as defined herein." N.J.S.A. 9:6-8.44. A stipulation of fact may substitute for the introduction of reliable evidence on a point, if "the consent of the parties to be bound by it [is] clearly established." J.Y., supra, 352 N.J. Super. at 265.

As defendant's counsel was not aware that the date for the fact-finding hearing had been advanced from September 12 to September 11, 2013, it is unlikely that defendant knew about the change before he spoke with his counsel that morning. Even the judge expressed some confusion as to the date, stating, "[w]e were supposed to be back September 12th, and this is September 11th." Although counsel spoke with defendant earlier that day,

there is no indication that they discussed defendant's waiver of his right to a fact-finding hearing, the implications of that waiver, or that defendant agreed to the truncated procedure of proceeding on the papers.

We have previously held that before a defendant stipulates to a finding of abuse or neglect at a fact-finding hearing, the Division

> after consultation with defense counsel, should advise the judge which specific provision of N.J.S.A. 9:6-8.21(c) is expected to be proven by way of defendant's stipulated facts. The judge must then explicitly inform the defendant: that by agreeing to enter into a stipulation, she is waiving her right to a hearing at which [the Division] must prove abuse or neglect by a preponderance of the evidence, . . . that at such a hearing, the judge would determine what documentary evidence and testimony would be admitted, and that defendant, through counsel, would have the right to challenge the evidence and cross-examine the witnesses, . . . that if the judge accepts defendant's stipulated facts and concludes they demonstrate abuse and/or neglect, the judge will enter an order finding that defendant has abused and/or neglected her child; and, that as a result of that order, [the Division] may seek termination of the defendant's parental rights, and the judge may remove, or continue the removal of, the child from the defendant's custody, . . . and/or require [the Division] to provide such services as are deemed appropriate to the ends of protecting the child and rehabilitating and improving family life[.]

> [Div. of Youth & Family Servs. v. M.D., 417
> N.J. Super. 583, 617-18 (App. Div. 2011)
> (citations omitted)].

We acknowledge that agreeing to have a judge decide a Title Nine matter based on submitted documents does not automatically result in the entry of a finding of abuse or neglect, as does a stipulation to abuse or neglect. Nevertheless, statutory and constitutional rights are impacted when a defendant waives the right to testify on his own behalf, to call witnesses, to cross-examine witnesses who testify against him, and to have a judge make credibility determinations. We see no reason why the same protections afforded to defendants entering stipulations of abuse or neglect announced in M.D., should not be required when a defendant waives the right to a fact-finding hearing.

Therefore, before a court permits a fact-finding hearing to proceed "on the papers" the judge must ensure that the defendant has been informed of the rights being waived, including the right to a hearing where the Division has the burden of proof, the right to testify and call witnesses, the right to confront and cross-examine witnesses against him, and the right to have the judge make credibility findings. The judge must then determine that a defendant's waiver of these rights is clear and unequivocal. As we did in M.D., supra, 417 N.J. Super. at 589, we refer this issue to the Supreme Court's Committee on Practice

in the Family Part, and the Acting Administrative Director of the Courts, and suggest that a form be adopted and used at all fact-finding hearings wherein the defendant waives a hearing and agrees to a determination of abuse or neglect on the papers.

Even where a defendant makes a knowing waiver and agrees to a determination on the papers, the judge is not required to accede to the parties' intention to proceed in that fashion. Trial judges are given wide discretion in exercising control over their courtrooms, J.Y., supra, 352 N.J. Super. at 264 (citations omitted), and the trial judge has the ultimate responsibility of conducting adjudicative proceedings in a manner that complies with required formality in the taking of evidence and the rendering of findings. If the record contains conflicting facts critical to the determination, the judge must reject the abbreviated procedure and proceed with a testimonial hearing.

We find no evidence in the record that defendant's counsel advised defendant that he had a right to a hearing, or that defendant made a knowing and voluntary waiver of that right. Due process requires that a parent charged with abuse or neglect have "adequate notice and [an] opportunity to prepare and respond[.]" N.J. Div. of Youth & Family Servs. v. N.D., 417 N.J. Super. 96, 109 (App. Div. 2010). Defendant's counsel's

suggestion that the significance of this proceeding was somehow diminished because defendant had a prior substantiation is also troubling. From the record before us, we conclude that defendant's counsel provided ineffective assistance by failing to ensure that defendant received the minimal protections he was entitled to during this "critical stage" of the proceedings. See N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 401 (2009).

Even if defendant had knowingly waived his right to a hearing, the evidence presented through the Division's documents was insufficient to establish that defendant abused or neglected his children.

The order of November 19, 2013 finding that defendant abused or neglected his children is vacated and the Division is directed to remove defendant's name from the Central Child Abuse Registry as to this incident within thirty days of the date of this opinion.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION