# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0927-17T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

G.A. and A.A.,

    Defendants,

and

E.M.,

    Defendant-Appellant.

_____

IN THE MATTER OF L.M., EZ.M., A.M.,
and J.M., Minors.

_____

Submitted October 9, 2018 – Decided October 15, 2018

Before Judges Sabatino and Haas.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FN-13-0250-16.

Joseph E. Krakora, Public Defender, attorney for appellant (James D. O'Kelly, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Joshua P. Bohn, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor L.M. (Todd S. Wilson, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor EZ.M. (Michele C. Scenna, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor A.M. (Danielle Ruiz, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor J.M. (Linda Vele Alexander, Designated Counsel, on the brief).

PER CURIAM

This matter arises from a series of incidents in which the defendant father, E.M., abused his children by engaging in excessive corporal punishment.[1]  In the most recent incident that was the focus of the court's fact-finding, the father beat his son, EZ.M. ("Emory") with a brush, because Emory came home late

---

[1] We use initials for the parties to protect their identities.  R. 1:38-3(d)(12).  We also use pseudonyms for some of the children for ease of the reader.

from school. An ensuing examination revealed marks on the child's leg that remained from when the father beat him with a computer cord roughly three months earlier. The Division of Child Protection and Permanency ("the Division") thereafter conducted an investigation, which included interviewing the child and his family members, and reviewing the results of a medical evaluation. After determining the allegations of child abuse or neglect were substantiated, the Division filed the present action for custody, care, and supervision of the four children.

After the fact-finding hearing, the trial court determined the Division had proven by a preponderance of the evidence that the father had abused or neglected the children by inflicting excessive corporal punishment in violation of N.J.S.A. 9:6-8.21(c)(4)(b). Among other things, the trial court found the child's grandmother, the doctor, and a Division caseworker provided credible testimony to support the finding of abuse. This appeal by the father followed. We affirm.

I.

On March 22, 2016, defendant E.M.'s daughter, L.M. ("Lori"), reported to her school's guidance counselor and a Division caseworker, Jennifer Gregorio, that E.M. had beaten Emory with a brush during the children's most recent visit

A-0927-17T1

with E.M. This punishment occurred after Emory had come home late from school. When Lori asked Emory if he was okay, he reportedly replied, "I'm used to it." Lori's report prompted Gregorio to interview Emory, who corroborated Lori's report of the beating and described additional instances of his father's corporal punishment.

E.M. stated to Division workers in the past that he intentionally does not leave marks when he strikes his children, in order to avoid detection. However, Emory stated to the contrary that he had sustained injuries and marks from such punishment in the past, and he referenced a mark on his upper thigh from a beating approximately three months earlier. Gregorio took Emory to the school nurse for examination and photographed the marks.

After Emory's interview and examination, he was accompanied to police headquarters by Gregorio and a detective. The detective interviewed E.M. He denied the accusation of beating Emory with a brush, stating, "I haven't popped my kid in a long time." Gregorio arranged a protective plan, under which E.M.'s contact with Emory would be supervised around the clock by his paramour. The caseworker also arranged for Emory to be examined by Steven Kairys M.D., the following day.

A-0927-17T1

Gregorio then conducted interviews with the paramour's children at their home, and traveled to defendant G.A.'s home where Emory's three siblings, Lori, A.M., and J.M., resided. Gregorio interviewed Emory's mother A.A., his siblings, and his maternal grandmother G.A. Emory is the only one of the four children who resides with E.M. Emory stated that his siblings "do not like visiting their father too much." All four children have expressed fear of their father, due to past instances of abuse.

Based on these circumstances, the Division filed a Title Nine complaint in the Family Part in March 2016, seeking care, custody, and supervision of E.M.'s four children. The court granted the Division legal custody of the children and ordered that E.M.'s parenting time be suspended. G.A. was granted temporary custody of Emory by court order.

Dr. Kairys' examination confirmed that the mark on Emory's leg was caused by being beaten with a cord or belt approximately three months earlier. Emory recounted to Dr. Kairys past instances of his father's abuse, telling the doctor that he did not want to live with his father.

Both Gregorio and Dr. Kairys testified for the Division at the ensuing fact-finding hearings in July and August 2016. G.A. testified on her own behalf at

5

the final hearing in December 2016, recounting her personal knowledge of E.M.'s abusive behavior that had occurred over the course of several years.

G.A. testified she saw the children being hit by their father on multiple occasions. She observed marks left by their father's physical punishment, overheard E.M. abuse the children's mother in their presence, and was told by the children about their father beating them with objects, punching them, and throwing objects at them.

E.M. was informed in advance that the final hearing would occur on December 7, 2016. However, he failed to appear in court on that scheduled date. Defense counsel expressed that E.M. wished to testify, and speculated that he might have been out of town, despite being on notice of the court date. Due to E.M.'s inexplicable absence, the court denied defense counsel's request for adjournment to allow E.M. to testify at a future date.

Sifting through the evidence, the trial judge concluded the Division's witnesses were credible and that the Division had demonstrated, by a preponderance of the evidence, that E.M. engaged in excessive corporal punishment on multiple occasions. The court accordingly issued an order on December 7, 2016, finding that the four children had been abused or neglected

by their father. This appeal followed. The various Law Guardians for the respective children join with the Division in opposing the appeal.

## II.

We proceed with a recognition of our limited scope of review of the Family Part judge's decision. We must defer to the factual findings of the Family Part if they are sustained by "adequate, substantial, and credible evidence" in the record. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). Our reviewing courts afford particular deference to family court fact-finding, due to the special jurisdiction of that court and its expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 413 (1998). The Court has also held that deference to a trial court's determinations is particularly warranted "when the evidence is largely testimonial and involves questions of credibility." Cesare, 154 N.J. at 412 (citation omitted).

Nevertheless, where there is an alleged error in the trial court's evaluation of the underlying facts, the scope of appellate review is expanded. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007). However, deference in such circumstances should still be accorded unless it is determined that the trial judge's findings were clearly mistaken. G.L., 191 N.J. at 605.

A-0927-17T1

E.M. argues the trial court denied him due process by allowing the Division to amend its pleadings at trial, allegedly relying on unestablished summaries of alleged past abuse, and in depriving him of an opportunity to testify in his own defense.  Apart from these procedural contentions, E.M. argues the Division's evidence was insufficient to establish excessive corporal punishment.  None of these arguments have merit.

The statutory context of this case is N.J.S.A. 9:6-8.21(c)(4)(b), which defines "an abused or neglected child" to include a child under the age of eighteen

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court[.]
>
> [(Emphasis added).]

The Division's regulations elaborate that evidence of "[c]uts, bruises, abrasions [or] welts" may reflect injuries to a child that will qualify as "abuse or neglect" under the statute.  See N.J.A.C. 3A:10-2.2(a)(9).

A-0927-17T1

A parent using corporal punishment may only inflict moderate correction that must be reasonable under the circumstances. See e.g., State v. T.C., 347 N.J. Super. 219, 239-40 (App. Div. 2002). Force that exceeds this reasonableness limit is sufficient to trigger the statute. See, e.g., New Jersey Div. of Youth & Family Servs. v. S.H., 439 N.J. Super. 137, 147 (App. Div. 2015) (holding that a parent administered excessive corporal punishment by striking a child with a golf club as discipline for using profanity, leaving the child with bruises); Dep't of Children & Families, Div. of Youth & Family Servs. v. C.H., 414 N.J. Super. 472, 481 (App. Div.), aff'd on reconsideration, 416 N.J. Super. 414 (App. Div. 2010) (holding that a mother committed actionable abuse or neglect through beating her daughter with a paddle).

The statute does not require that the child in question experience actual harm to constitute abuse or neglect. N.J.S.A. 9:6-8.21(c)(4)(b); see also N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 449 (2012) (explaining that the Division need not wait until a child experiences an actual injury) (citing In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999) (stating that the court does not need to "wait to act until a child is actually irreparably impaired by parental inattention or neglect.")). Instead, a child can be abused and neglected

if his or her physical, mental, or emotional condition has been "impaired or is in imminent danger of becoming impaired[.]"  N.J.S.A. 9:6-8.21(c)(4).

The Title Nine analysis is fact-sensitive, and the court must consider the totality of the circumstances.  See N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 33 (2011).  The primary focus of the statute is to preserve the safety of the child.  N.J.S.A. 9:6-8.8(a).

A.

E.M. contends the trial court acted unfairly in allowing the Division to amend its complaint during the fact-finding hearing to amend its allegations to include other past instances of corporal punishment.  We disagree.  The past allegations were pertinent to the Division's theory of an ongoing pattern of physical abuse.  The trial court complied with N.J.S.A. 9:6-8.50(b), which authorizes the court to permit the Division to amend its allegations to conform to the evidence, so long as the charged parent is afforded a "reasonable time to prepare to answer the amended allegations."

Here, the court provided E.M. and his counsel with nearly four months of notice between the second day of trial in August 2016 and the third and final day of trial in December 2016, at which time G.A. testified and related her knowledge concerning the repetitive instances of corporal punishment.  There

10

was ample time for the defense to respond to, or attempt to counter, the allegations.

We reject E.M.'s argument that the Division and the trial court misused past unsubstantiated allegations against him as indicia of wrongful conduct. The evidence of past behavior was not presented as violations for the court to adjudicate in this case. Moreover, G.A. testified as to her personal knowledge of abuse that occurred in 2004 and again in 2007, not to unsubstantiated Division investigations. In addition, as further corroboration, the record contains multiple statements from the parties' children, and evidence of G.A.'s unsuccessful efforts to stop the abuse.

E.M.'s claim that he was deprived of a fair opportunity to testify as a witness in his own behalf is not borne out by the record. To be sure, parents have the right to testify in their own defense in Title Nine proceedings, <u>N.J. Div. of Child Prot. & Permanency v. S.W.</u>, 448 N.J. Super. 180, 192 (App. Div. 2017). Here, it was E.M., not the court, who deprived himself of the opportunity to testify.

As we had already noted, E.M. had months of notice of the final hearing date at which he would be permitted to testify. Yet defense counsel did not

know why her client was absent, stating she heard "he might have been out of town for two weeks."

E.M. has not presented any compelling justification for why he did not appear at the December 2016 final trial date. If he knew he was going to be out of town for the final scheduled hearing, E.M. could have requested an adjournment in advance. E.M.'s absence appears to have been anticipated, if not deliberate.

E.M.'s circumstances concerning his opportunity to testify are distinguishable from the reported and unreported cases cited in his brief. Both cases involve parents who arrived late to their respective hearings, but who were not completely absent. Unlike the parents in those cases, E.M. demonstrated no effort to attend the hearing, despite having adequate notice of the court date, and did not explain his absence. He cannot fairly assert that the court deprived him of his right to testify.

Given the importance of resolving child welfare cases expeditiously, we discern no abuse of discretion, let alone a denial of due process, arising from the trial court's decision to close the record and proceed to issue its final decision on the last scheduled day of trial.

12

B.

We need not say much about the weight of the evidence in this case, or E.M.'s claim that the Division's proofs did not suffice to establish excessive corporal punishment by a preponderance of the evidence. We reject his claim substantially for the sound reasons expressed in Judge Terrence P. Flynn's decision. We add only a few comments.

The record clearly shows that E.M. harmed Emory through excessive corporal punishment on one or more occasions. First, Dr. Kairys's expert testimony stated that Emory was physically harmed when his father beat him with a computer cord, and that this was not an accidental or isolated incident. Dr. Kairys noted that E.M. had used enough force to break blood vessels in Emory's skin, produce bruising that was still visible three months after the incident, and cause Emory considerable pain. The expert explained that an inflicted injury that leaves marks and bruises in this manner is consistent with the medical definition of physical abuse or excessive physical discipline. Dr. Kairys also expressed his professional concern for future risk of harm to Emory if E.M.'s pattern of physical discipline did not change.

In addition, G.A. testified that Emory has been in counseling to deal with the abuse, and that he quit the school's wrestling team because it triggered

A-0927-17T1

memories of E.M.'s abuse. Furthermore, she testified to a journal in which Emory wrote that he had suicidal thoughts and considered running away because he couldn't take the abuse anymore. These signs of physical and emotional harm virtually speak for themselves.

In sum, E.M.'s procedural and substantive arguments provide no basis to set aside the trial court's well-reasoned findings of this parent's commission of abuse or neglect through the infliction of excessive corporal punishment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0927-17T1