# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4837-17T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

R.K.W.,

     Defendant-Appellant,

and

S.L.W.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF M.E.W.,

     a Minor.

_____

Submitted September 10, 2019 – Decided  October 2, 2019

Before Judges Messano, Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FG-08-0052-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Catherine F. Reid, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Salima E. Burke, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Todd S. Wilson, Designated Counsel, on the brief).

PER CURIAM

Defendant R.K.W. is the father of nine children; six of whom were born to defendant and his wife, S.L.W. (Sophia), during their marriage.[1] The couple's two youngest children, M.E.W. (Martin) and N.A.W. (Norbert), were born in March 2007 and February 2006, respectively. We set forth the family's involvement with the Division of Child Protection and Permanency (the Division) in our prior opinion, N.J. Div. of Child Protection & Permanency v. S.W., 448 N.J. Super. 180, 183–87 (App. Div. 2017), in which we reversed the

---

[1] We use initials and fictitious names to protect the privacy of the parties. We adopt the same fictitious names we used in our prior opinion.

Family Part's November 2013 order finding that defendant had "abused or neglected his children[.]" Id. at 194.

While the appeal was pending, defendant and Sophia separated and remained living apart. Id. at 184. The children, who had temporarily been returned to Sophia's custody after their initial removal, were returned to the Division's custody in August 2013, after Sophia became homeless. Id. at 187. The children were placed in a resource home at that time. Ibid. The Division, which had initiated termination proceedings, eventually dismissed the pending guardianship complaint and resumed efforts to reunify defendant and the children, as recommended by the Division's expert, James Loving, Psy.D. The Division provided services to the family.

However, during 2016, defendant's participation in services became sporadic, and he continued to lack adequate housing permitting reunification with his sons. In October, defendant suffered a near-fatal heroin overdose en route to a supervised visitation session and was taken by ambulance to the hospital for treatment. Defendant entered an inpatient treatment program, and his housing remained unsuitable for reunification with the children. In January 2017, the court approved a permanency plan for termination of defendant's and

Sophia's parental rights, and the Division filed a second guardianship complaint.[2]

The trial took place over non-successive days during February, April and May 2018 before the same judge who entered the original Title Nine fact-finding order we reversed in our prior opinion.[3] The judge excluded from evidence all Division records prior to August 15, 2013, the date of the second removal of the children, and the Division's caseworker, Michelle Pisarek, and Dr. Loving testified on the Division's behalf. Defendant and his paramour, O.L. (Olivia), also testified.

In her oral opinion placed on the record three weeks after the conclusion of testimony, the judge provided an "outline" of her decision because she was in the midst of another trial, recognizing it did not include "all the detail" she needed. She further announced she would "do an appendix, as well[.]"

The judge began by stating she had "pored over the caseworker notes," citing an exhibit she had ruled inadmissible before trial. She then found the Division had proven by clear and convincing evidence the first three prongs of

[2] On May 2, 2017, the court entered an order declaring Sophia, who had never appeared after the filing of the second guardianship complaint, in default. Sophia never participated in the proceedings thereafter.

[3] Defendant did not object to the judge sitting on the guardianship trial.

the statutory best-interests-of-the-child test, N.J.S.A. 30:4C-15.1(a), as to both Martin and Norbert. As to the fourth prong, whether "[t]ermination of parental rights will not do more harm than good[,]" N.J.S.A. 30:4C-15.1(a)(4), for reasons more fully explained below, the judge found the Division met its burden as to Martin, but not as to Norbert. The judge entered two orders, one terminating defendant's and Sophia's parental rights to Martin, and a second, dismissing the guardianship complaint as to Norbert and re-opening the litigation on the FN docket.[4]

Approximately five months later, after defendant filed his notice of appeal, the judge issued an unsigned six-page "[a]ppendix." It contains slightly more than a single paragraph summarizing the judge's findings as to prongs one and two, and a chronological series of events documenting the judge's "[p]rong three findings."[5]

Before us, defendant contends we should reverse the order terminating his parental rights to Martin because the Division failed to satisfy by clear and convincing evidence the second, third and fourth prongs of the statutory test.

---

[4] The Division and Norbert have not appealed from this order. Sophia has not appealed the termination of her parental rights to Martin.

[5] The judge later issued a signed copy of the appendix.

A-4837-17T2

He also argues the judge considered documents that were never admitted into evidence at trial, and her opinion, even as supplemented by the "appendix, fail[ed] to comply with Rule 1:7-4[(a)]." The Division and Martin's Law Guardian urge us to affirm the termination order.

We have considered the arguments in light of the record and applicable legal standards. We affirm.

I.

Under our well-known standards of review, we must uphold the trial court's findings if "supported by adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). We defer to the judge's factual findings because she had "the opportunity to make first-hand credibility judgments about the witnesses . . . [and] ha[d] a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293 (2007)). We accord even greater deference to the Family Part's factual findings because of its "special jurisdiction and expertise in family matters[.]" N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)).

A-4837-17T2

"Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice." E.P., 196 N.J. at 104 (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." R.G., 217 N.J. at 552–53 (quoting Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"The focus of a termination-of-parental-rights hearing is the best interests of the child." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 447 (2012) (citing N.J. Div. of Youth & Family Servs. v. R.D., 207 N.J. 88, 110 (2011)). The four statutory prongs "are neither discrete nor separate. They overlap to provide a composite picture of what may be necessary to advance the best interests of the children." M.M., 189 N.J. at 280 (quoting N.J. Div. of Youth & Family Servs. v. F.M., 375 N.J. Super. 235, 258 (App. Div. 2005)).

We focus on the three prongs defendant addresses in his appeal.

Prong Two

Prong Two requires the Division prove by clear and convincing evidence that:

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child[.]

[N.J.S.A. 30:4C-15.1(a)(2).]

"[T]he inquiry centers on whether the parent is able to remove the danger facing the child." F.M., 211 N.J. at 451 (citing In re Guardianship of K.H.O., 161 N.J. 337, 352 (1999)). "Prong two may also be satisfied if 'the child will suffer substantially from a lack of . . . a permanent placement and from the disruption of [the] bond with foster parents.'" Ibid. (alteration in original) (quoting K.H.O., 161 N.J. at 363); see also N.J. Div. of Youth & Family Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004) ("[T]he . . . statute[] reflect[s] reforms acknowledging the need for permanency of placements by placing limits on the time for a birth parent to correct conditions in anticipation of reuniting with the child.").

In finding prong two was satisfied as to both boys, the judge determined that despite a plethora of services provided to defendant, he failed to comply with reunification efforts and relapsed into drug use several times. In her

appendix, the judge noted defendant suffered "three relapses" after the Division removed the children.

Defendant argues "it was reasonably foreseeable" he could provide a "safe and stable home to his children[,]" because although the judge ordered termination of parental rights as to Martin, she said in her oral opinion, but not in the order, that the Division "will have to create a plan . . . [for] reunification between [Norbert] and [defendant]." Defendant notes that approximately one month later, in July 2018, another judge entered an order permitting the Division to return Norbert to defendant's home without further court order.

However, at the time of trial, defendant was living with Olivia in a one-bedroom apartment and was unable to provide sufficient housing to reunify the family. In addition, Dr. Loving's opinion, which the judge found credible, was that defendant's prior substance abuse and repeated relapses, despite periods of sobriety, posed a "risk for neglect in terms of meeting [his sons'] basic needs." Dr. Loving also noted that when he evaluated defendant seven months earlier, defendant was living in a half-way house and "ha[d] a long history of housing instability." Although defendant "had a basic plan [to address his family's housing needs] . . . he was . . . not in a position to carry out that plan."

A-4837-17T2

We also do not accept defendant's contention that the judge's decision regarding Norbert reflects a lack of sufficient evidence as to prong two regarding Martin. A fair interpretation of the judge's decision regarding Norbert demonstrates that her focus was on the insufficiency of the Division's prong four proofs, not the prong two evidence. We conclude the Division satisfied prong two of the statutory test.

Prong Three

N.J.S.A. 30:4C-15.1(a)(3) requires the Division make "reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home," and the court to "consider[] alternatives to termination of parental rights[.]" Defendant does not assert that the Division failed to provide adequate services to him and the family; indeed, the judge outlined those services in detail both in her oral opinion and in the appendix.

Rather, he contends the Division never considered alternatives to termination, such as kinship legal guardianship (KLG) or continued placement in foster care, and the judge never articulated her findings in this regard. The argument lacks sufficient merit to warrant extended discussion. R. 2:11-3(e)(1)(E).

10

There is nothing in the record demonstrating defendant ever asserted there were relatives willing or able to have Martin placed with them. Moreover, it is well established that KLG is a permanent option only "when adoption 'is neither feasible nor likely' and '[KLG] is in the child's best interest.'" N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 512 (2004) (quoting N.J.S.A. 3B:12A-6(d)(3)–(4)). "[W]hen the permanency provided by adoption is available, [KLG] cannot be used as a defense to termination of parental rights . . . ." Id. at 513. Although they demonstrated some early equivocation, by the time of trial, Martin's resource family expressed a desire to adopt him. We reject defendant's arguments as to prong three.

Prong Four

The fourth prong serves as a "'fail-safe' inquiry guarding against an inappropriate or premature termination of parental rights." F.M., 211 N.J. at 453 (quoting G.L., 191 N.J. at 609). "The question ultimately is not whether a biological mother or father is a worthy parent, but whether a child's interest will best be served by completely terminating the child's relationship with th[e] parent." E.P., 196 N.J. at 108. Typically, "the [Division] should offer testimony of a well[-]qualified expert who has had full opportunity to make a comprehensive, objective, and informed evaluation of the child's relationship

11

with both the natural parents and the foster parents." F.M., 211 N.J. at 453 (quoting M.M., 189 N.J. at 281).  However, when the court is presented with "a clear and compelling record warranting the termination of parental rights," termination is appropriate "even in the absence of evidence showing that [the child] has bonded with his foster parents." N.J. Div. of Youth & Family Servs. v. F.H., 389 N.J. Super. 576, 623 (App. Div. 2007).

In considering the prong four evidence, the judge noted defendant's extensive history of drug abuse and relapses, and the Division's almost exclusive custody of the children since August 2012.  The judge referenced defendant's bona fide efforts prior to the October 2016 relapse, after which defendant stopped visiting with his sons, and the disappointment that resulted from the children's perspective as a result of not seeing their father.

Defendant contends there was no evidence of a bond between Martin and his foster parents, or that they intended to adopt the child.  However, Dr. Loving's testimony was unrebutted.  Although he did not perform a bonding evaluation between Martin and his resource parents, Dr. Loving cited "some basic information that really does point to [Martin] having attachments to these caregivers and wanting to stay with . . . them[.]"  Dr. Loving opined that both boys "would not suffer serious and enduring harm" if defendant's parental rights

12

were terminated. The lack of permanency, on the other hand, was "inherently damaging."

As noted, there was evidence of the resource parents' intention to adopt Martin. Pisarek's testimony, which the judge found credible, clearly demonstrated the resource parents, initially hesitant to adopt, now expressed their intention to do so. Before us, defendant asserts the evidence of an intention to adopt was based solely on Pisarek's hearsay testimony and Division records, which he claims included inadmissible hearsay. However, defendant never objected to Pisarek's testimony or admission of these particular records at trial. Had he done so, the Division presumably could have called the foster parents as witnesses. See M.C. III, 201 N.J. at 341–42 (finding no "fundamental injustice" requiring relaxation of the "invited error doctrine" where defense counsel made no objection and "the Division could have taken steps to satisfy any evidentiary requirements").

Defendant again asserts that the trial judge's decision regarding Norbert demonstrates the lack of clear and convincing prong four evidence as to Martin. However, "courts have recognized that terminating parental rights without any compensating benefit, such as adoption, may do great harm to a child." E.P., 196 N.J. at 109 (citing N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J.

591, 610–11 (1986)). "Such harm may occur when a child is cycled through multiple foster homes after a parent's rights are severed." Ibid.

Here, the evidence demonstrated that Norbert had special needs, and he had been placed and moved multiple times to successive resource homes. This lack of permanency had adverse effects on the child. The Division was unable to find a suitable adoptive home, nor was it foreseeable that the Division would find one in the near future. As we see it, the judge recognized potential exacerbation of these adverse effects from Norbert's continued "cycl[ing] through multiple foster homes," ibid., if defendant's parental rights were terminated. She concluded the Division failed to prove prong four as to Norbert.

The prong four evidence as to Martin, however, was sufficient.

II.

Defendant argues we must vacate the judgment of guardianship because the trial judge considered documents that were not in evidence. He cites to Division records that were excluded at the beginning of trial and nevertheless referenced in the judge's appendix.

We acknowledge that a portion of the judge's appendix references information that was not in evidence. However, these are little more than chronological recitations of services the Division furnished to defendant and the

family, both before and more extensively after the August 2013 second removal. We are not convinced that the judge's reference to the inadmissible evidence was essential to her decision. Moreover, there is ample evidence within the record, including other parts of the appendix based on defendant's conduct and the Division's services after the children's removal, to support the court's findings.

We find no basis to reverse on these grounds.

III.

Lastly, defendant contends that we must vacate the judgment because the judge failed to comply with Rule 1:7-4(a), specifically, she failed to "make the threshold factual findings necessary for [her] fourth prong legal conclusion as to Martin" by not assessing Martin's bond with his resource parents as compared to his attachment to defendant. We agree with the Law Guardian's assessment of the record, i.e., that the judge's oral "decision and appendix could have been more organized or detailed," but these shortcomings were not fatal to our meaningful review or to the underlying judgment.

"In a non-jury civil action, the trial court shall make findings of fact and state its conclusions of law." M.C. III, 201 N.J. at 342 (citing R. 1:7-4(a)). "That is, 'the trial court must state clearly its factual findings and correlate them

15

with the relevant legal conclusions.'" Ibid. (quoting Curtis v. Finneran, 83 N.J. 563, 570 (1980)). "Failure to make explicit findings and clear statements of reasoning 'constitutes a disservice to the litigants, the attorneys, and the appellate court.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Curtis, 83 N.J. at 569–70).

In her oral opinion, the judge discussed the relationship between Martin and defendant, and she considered Dr. Loving's bonding evaluation and trial testimony in this regard. She also considered the relationship that Martin enjoyed with his resource parents, both as described by the child, Dr. Loving's assessment of the records, and Pisarek's testimony.

While we do not countenance the judge's rambling discussion of the trial evidence, we are convinced by our own independent assessment of the record that her conclusions were "supported by 'substantial and credible evidence on the record'" and are entitled to our deference. F.M., 211 N.J. at 448 (quoting M.M., 189 N.J. at 279).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4837-17T2