# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1550-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

C.F.,

     Defendant,

and

M.L.,

     Defendant-Appellant.

_____

IN THE MATTEER OF J.F.-L.,
a minor.

_____

Argued October 4, 2021 – Decided November 1, 2021

Before Judges Messano and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FN-16-0103-19.

Beth Anne Hahn, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Beth Anne Hahn, on the briefs).[1]

Amy Melissa Young, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Jane C. Schuster, Assistant Attorney General, of counsel; Toni Lynn Imperiale, Deputy Attorney General, on the brief).

PER CURIAM

Following a fact-finding hearing, see N.J.S.A. 9:6-8.44, the Family Part judge determined that defendant M.L., and his paramour, C.F. (Cindy) abused or neglected their twelve-day-old son, J.F.-L. (Josh).[2] According to the court's June 19, 2019 order, the judge found that defendant "left [Josh] in a swing in proximity to [Cindy] who was in possession of a knife while both parties had admitted to drinking." On November 1, 2019, the court entered an order terminating the litigation, and defendant now appeals.[3]

---

[1] A non-participation letter was received from the Law Guardian for J.F.-L.

[2] Initials and pseudonyms are used pursuant to Rule 1:38-3(d)(12).

[3] Josh was returned to Cindy's physical custody. She has not appealed from the fact-finding order.

M.L. contends: 1) he was not, and never had been, Josh's primary caretaker, an argument not raised in the Family Part; and 2) the Division of Child Protection and Permanency (the Division) failed to prove that he "[i]nadequately [s]upervised Josh[, t]hereby [e]xposing [h]im to . . . [i]mminent [r]isk of [s]ubstantial [h]arm." We agree with the later point and reverse.

I.

At the fact-finding hearing, the Division produced a single witness, Erika Andrade-Pena, an intake worker who identified certain documentary evidence, which the judge admitted, noting that "imbedded hearsay or the references to various individuals who had made hearsay statements . . . within those particular documents" was not being admitted. Defendant, who lived in Arizona during Cindy's pregnancy, returned to New Jersey recently before Josh was born on November 9, 2018.

On November 21, 2018, defendant was visiting Josh at Cindy's apartment. The Division's special response unit answered a referral from the Passaic Police Department at 2:51 a.m. on November 22. Police responded to the apartment because defendant called them claiming Cindy was "acting disorderly," Josh was in the apartment, and he believed "she [was] a danger to herself and the baby." Police "knocked the door down in order to gain entry" and spoke with Cindy.

She claimed that she and defendant had a verbal dispute and defendant locked himself in Cindy's bedroom. Initially, Cindy told police she used a "knife to try and pry the door open[,]" but later admitted she threatened suicide to convince defendant to open the door. Police observed cuts on Cindy's wrists, and she was intoxicated. A third person M.G. (Mike) was in the apartment when police arrived.[4] Police summoned emergency medical services who took Cindy to the hospital where she was held for psychiatric evaluation.

Division workers who responded to the hospital spoke with Cindy, who said defendant was playing "mind games," without further elaboration. Cindy reiterated that she was cut trying to use a knife to get into the locked bedroom. However, when confronted by the worker, Cindy admitted the cuts on her wrist were self-inflicted.

Division workers also spoke to defendant at the hospital. He recounted two incidents which eventually led him to summon police. The first occurred when Cindy and Mike left to get wine. When they returned, Cindy got mad at defendant and left again to buy more wine with Josh in the car seat. Upon her return, Cindy tried to "side[]swipe" defendant, who was outside, with her car.

---

[4] Police spoke with Mike, but the judge sustained Cindy's counsel's hearsay objections to statements attributed to Mike in the police report.

A-1550-19

Defendant said he was feeding Josh when Cindy got angry at him again and started grabbing knives. Defendant and Mike left the apartment to give Cindy time to "calm down." When they returned, Cindy was in the shower, but, when she got out and saw defendant, she again grabbed a knife. Defendant then locked himself in her bedroom, called police and left the bedroom through a window. Josh was in his baby swing in the kitchen for the duration of the dispute until police arrived.[5]

In his oral opinion that followed the testimony, the judge recounted the events as described by Cindy and defendant. He noted that defendant said Cindy had been drinking alcohol and was driving with Josh in the car. The judge noted that on her return, Cindy "took out knives and attempted to attack [defendant] while [Josh] was in his baby swing." Cindy left the apartment with a friend, returned, and took a shower. When Cindy emerged, "she immediately attempted to attack [defendant] again with a knife." The judge said defendant "locked himself in the bedroom" and "proceeded to jump out of the bedroom

---

[5] After conducting its investigation, the Division "substantiated" a finding of abuse or neglect against defendant. See S.C. v. N.J. Dep't of Child. & Fams., 242 N.J. 201, 225–26 (2020) (explaining the different levels of administrative findings contained in the regulatory scheme, N.J.A.C. 3A:10-7.3(c)).

A-1550-19

window . . . . [Josh] remained in the kitchen in his baby swing for the entirety of this incident."

The judge found that Cindy "acted in a willful and wanton disregard of the safety or the potential safety of [Josh] who was . . . in close proximity to both the mother and the father at the time of the incident." As to defendant, the judge found he "inadequately supervised [Josh] by leaving [the infant] in his baby swing in the kitchen, despite being aware that [Cindy] was in crisis with a knife in her possession." The judge also added that "both parties had admitted to drinking."[6] The judge entered the order under review.

## II.

Our standards of review are well-known. "We will not overturn a family court's factfindings unless they are so 'wide of the mark' that intervention is necessary to correct an injustice." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). Appellate courts defer to a trial court's factual findings "because it has the opportunity to make first-hand credibility judgments about

---

[6] The judge made this finding based on Pena's testimony. Pena's testimony was based solely on the investigation summary, because she did not interview defendant. However, the investigation summary states defendant denied he was drinking.

A-1550-19

the witnesses who appear on the stand; it has a feel of the case that can never be realized by a review of the cold record." N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 342–43 (2010) (quoting E.P., 196 N.J. at 104). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare v. Cesare, 154 N.J. 394, 413 (1998).

However, "'where the focus of the dispute is . . . alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom,' the traditional scope of review is expanded." N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188–89 (App. Div. 1993)). "[W]e give no 'special deference' to the court's 'interpretation of the law.'" N.J. Div. of Child Prot. & Permanency v. P.D., 452 N.J. Super. 98, 119 (App. Div. 2017) (quoting D.W. v. R.W., 212 N.J. 232, 245 (2012)).

"The focus of Title 9 'is not the "culpability of parental conduct" but rather "the protection of children."'" N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 368 (2017) (quoting Dep't of Child & Fams., Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 178 (2015)). "[W]hen there is no evidence of actual harm, the focus shifts to whether there is a threat of harm."

E.D.-O., 223 N.J. at 178 (citing N.J. Dep't of Child. & Families v. A.L., 213 N.J. 1, 22 (2013)). "Under those circumstances, 'the Division must show imminent danger or a substantial risk of harm to a child by a preponderance of the evidence.'" Ibid. (quoting A.L., 213 N.J. at 23).

Title 9 defines an "[a]bused or neglected child" as one under the age of eighteen whose

> physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4)(b) (emphasis added).]

A "minimum degree of care" means that a parent's conduct must be "grossly negligent or reckless." N.J. Div. of Child Prot. & Permanency v. Y.N., 220 N.J. 165, 180 (2014) (quoting Dep't of Child. & Families, Div. of Youth & Fam. Servs. v. T.B., 207 N.J. 294, 306 (2011)). "The Division must establish that, at a minimum, a parent acted with gross negligence or recklessness to succeed in a prosecution under N.J.S.A. 9:6-8.21(c)(4)(b)." Id. at 181. A parent's failure to perform some "cautionary act" is insufficient unless that failure "rise[s] to the level of gross negligence." T.B., 207 at 310. Given the fact-sensitive nature of

the inquiry, "[t]o determine if a parent or guardian failed to exercise a minimum degree of care, we must additionally 'account for the surrounding circumstances.'" A.B., 231 N.J. at 369 (quoting E.D.-O., 223 N.J. at 180).

Defendant first challenges the competency of the evidence, noting Pena essentially read from documentary evidence, much of which contents she lacked personal knowledge. N.J.S.A. 9:6-8.46(a)(3) allows records "of any condition, act, transaction, occurrence or event relating to a child in an abuse or neglect proceeding . . . [as] proof of that condition, act, transaction, occurrence or event" if it meets the prerequisites for admission of a business record. However, hearsay embedded in the records must satisfy a separate hearsay exception. N.J. Div. of Child Prot. & Permanency v. J.D., 447 N.J. Super. 337, 347 (App. Div. 2016).

We have expressed disapproval of fact-finding hearings conducted "on the papers" where facts are contested. N.J. Div. of Child Prot. & Permanency v. S.W., 448 N.J. Super. 180, 182-83 (App. Div. 2017). In this case, however, as the Division argues, defense counsel lodged very few objections to the documents; when she did, the judge made rulings and sometimes sustained the objections. This aspect of defendant's appeal does not merit reversal.

However, the Division failed to prove that defendant's acts or omissions were "grossly negligent or reckless." <u>Y.N.</u>, 220 N.J. at 180. The judge specifically found that Cindy "took out knives and attempted to attack [defendant] while [Josh] was in his baby swing." After leaving the apartment, returning, and emerging from a shower, the judge found Cindy "immediately attempted to attack [defendant] again with a knife," and defendant locked himself in the bedroom as Cindy "cut herself on her left forearm." The judge also found as a fact that defendant "proceeded to jump out of the bedroom window. . . . [Josh] remained in the kitchen in his baby swing for the entirety of this incident." It is undisputed that defendant called the police out of concern for Josh's well-being.

We further note that the judge failed to address the undisputed fact that Mike was also in the apartment. There was no evidence that Mike was incapable of ensuring that Cindy did not pose a substantial, imminent threat to Josh's safety.

At oral argument before us, the Division focused on defendant's knowledge that Cindy was intoxicated and drove to the liquor store with Josh in the car. The implication was that defendant's failure to stop Cindy from taking Josh was tantamount to neglect. However, the judge made no factual findings

to support that legal conclusion, specifically basing the neglect determination on findings that defendant "inadequately supervised [Josh] by leaving [the infant] in his baby swing in the kitchen, despite being aware that [Cindy] was in crisis with a knife in her possession." The judge's determination that defendant's incautious failure to act amounted to child neglect failed to "account for the surrounding circumstances," A.B., 231 N.J. at 369 (quoting E.D.-O., 223 N.J. at 180), including that Cindy had twice threatened defendant with knives and was cutting herself while defendant remained locked in the bedroom for his own safety.

We reverse the fact-finding order and direct the Division to remove defendant's name from the Child Abuse Registry.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION