NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2452-14T1

ROSALIE BACON, individually and on
behalf of G.P., Z.P., J.B., M.B.,
D.B., and Z.H.; JOSEPH BARUFFI,
individually and on behalf of J.B.;
ELIZABETH CULLEN, individually and
on behalf of T.C.; EDIE RILEY,
individually and on behalf of S.R.;
ARNETTA RIDGEWAY and CHRISTOPHER
GLASS, individually and on behalf of
J.G., F.G., and D.G.; COMMERCIAL,
HAMMONTON, LITTLE EGG HARBOR, MAURICE
RIVER, OCEAN, QUINTON, UPPER DEERFIELD,
WALLINGTON, BUENA REGIONAL, CLAYTON,
EGG HARBOR CITY, LAKEHURST, LAKEWOOD,
LAWRENCE and WOODBINE SCHOOL DISTRICTS,

> Plaintiffs-Appellants,

v.

NEW JERSEY STATE DEPARTMENT
OF EDUCATION,

> Defendant-Respondent.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **November 6, 2015** |
| **APPELLATE DIVISION** |

Argued September 30, 2015 — Decided November 6, 2015

Before Judges Alvarez, Haas and Manahan.

On appeal from Superior Court of New Jersey,
Law Division, Mercer County, Docket No. L-
1989-14.

David G. Sciarra argued the cause for
appellants (Education Law Center and Jacob &
Chiarello, LLC, attorneys; Mr. Sciarra and
Theresa S. Luhm, on the briefs).

Donna Arons, Deputy Attorney General, argued the cause for respondent (John J. Hoffman, Acting Attorney General, attorney; Michelle L. Miller, Assistant Attorney General, of counsel; Ms. Arons, on the brief).

The opinion of the court was delivered by

HAAS, J.A.D.

Plaintiffs, a group of fifteen school districts, and parents and children from those districts, appeal from the Law Division's December 15, 2014 order dismissing their complaint. Plaintiffs brought the complaint as a summary action "to enforce agency orders" under Rule 4:67-6(a)(2). Plaintiffs sought to compel defendant New Jersey State Department of Education (the Department) to provide "the funding and high quality preschool provided by the School Funding Reform Act of 2008 [SFRA], along with facilities improvements and other measures . . . ."

The trial judge ruled that plaintiffs could not pursue the summary action under Rule 4:67-6(a)(2) because the district-specific needs assessments which they sought to enforce did not require the Department to fully fund the districts under the SFRA or otherwise provide for specific relief and, therefore, there were no orders capable of being enforced under the rule. Having carefully reviewed the record and arguments on appeal, we affirm.

A-2452-14T1

In December 1997, twenty school districts, known as the "Bacon districts,"[1] filed a complaint in the Chancery Division against the Department, the Commissioner of the Department (the Commissioner), and several State officials. Bacon v. N.J. State Dep't of Educ., 398 N.J. Super. 600, 606 (App. Div. 2008), certif. denied, 210 N.J. 218 (2012). The districts were "rural and property-poor" and sought a declaratory judgment that the Comprehensive Educational Improvement and Financing Act of 1996, N.J.S.A. 18A:7F-1 to -42 (CEIFA), failed to provide a thorough and efficient education to their students, in violation of the New Jersey Constitution. Ibid.

In their complaint, the Bacon districts sought State "funding equivalent to that provided to the State's richest school districts." Ibid. Essentially, the Bacon districts wanted to be funded in the same manner as their urban counterparts, the Abbott districts. Id. at 606-07. Under CEIFA, all districts with concentrations of impoverished students received State aid to address the unique educational difficulties that face such students. Id. at 605. All districts classified as Abbott districts received an additional

_____

[1] The number of districts involved in this litigation has continuously varied.

type of aid, known as parity aid, which was "intended to support the per pupil expenditure level of the Abbott [d]istricts at the level of" New Jersey's wealthiest districts. Ibid. (citing Abbott v. Burke, 153 N.J. 480, 567 (1998) (Abbott V)).

In February 1998, the parties entered into a consent order and jurisdiction was transferred to the Commissioner, who transmitted the matters to the Office of Administrative Law.[2] Id. at 607. A bifurcated hearing was held before an Administrative Law Judge (ALJ). Ibid. At the first phase of the hearings, the ALJ determined that the districts had been using their "CEIFA funding appropriately." Id. at 608.

During the second phase of the hearings, the districts needed to show "that educational deficiencies existed and the deficiencies could not be remedied, under current law and funding levels, by different programmatic and fiscal choices." Ibid. The ALJ determined that five districts needed additional funding; however, the Commissioner subsequently found that only one district needed additional funding and that CEIFA funding was sufficient with respect to the other districts. Ibid.

---

[2] After the Commissioner and the Department filed motions to dismiss the petition for lack of standing, "the petition was amended to add several students attending some of the school districts and their parents." Id. at 607.

Eight districts ultimately appealed the Commissioner's decision to the State Board of Education (the Board). Id. at 608-09. The Board issued its final decision on January 4, 2006. Id. at 609. Overall, the Board found that Bacon district students were "not being afforded a thorough and efficient education." Ibid. Additionally, the Board determined that "the children in [the Bacon districts] had 'special needs arising from the socioeconomic conditions in the districts[,]'" which were not being addressed by the available programming. Ibid. The Board "recognize[d] that CEIFA has provided these districts with more fiscal resources than ha[d] been available to them previously" and that "progress ha[d] been made under CEIFA to improve the quality of the education" in the Bacon districts. In spite of those gains, the Board still concluded that the students were being deprived of a thorough and efficient education. The Board also determined that CEIFA had created a fragmented funding system that failed students statewide, not just in the Abbott and Bacon districts.

After determining that there were constitutional violations in the Bacon districts, the Board examined the remedies that would best address the specific needs of those districts. Significantly, the Board rejected the idea

> that merely providing the [Bacon] districts
> with the same fiscal resources that are

> provided to the Abbott [d]istricts will ensure that the students of these districts are in fact afforded the educational opportunity to which they are entitled. While poor, the districts involved here are not identical to the districts that have been classified as Abbott [d]istricts. The very fact that they are not urban means that they face a unique set of circumstances that are different from those confronting the poor urban districts.

As an alternative to providing the Bacon districts with the same funding as Abbott districts, the Board directed the Commissioner to supervise the Department in "develop[ing] a design for a needs assessment to be performed in" the Bacon districts that would focus on the unique problems that confronted the individual districts.

In response, the Commissioner "recommended awaiting executive and legislative action on a new funding formula" then being considered by the Governor and the Legislature. Bacon, supra, 398 N.J. Super. at 613. The new funding formula was enacted in 2008 as the SFRA, N.J.S.A. 18A:7F-43 to -63. Ibid. Whereas CEIFA created a fragmented funding system, SFRA removed references to Abbott districts, id. at 613, n.10, and applied one uniform funding formula to all 618 school districts in New Jersey. Id. at 615. Under SFRA:

> [T]he Department [would] calculate how much it costs to meet the constitutional mandate of affording every student in this [s]tate a thorough and efficient education. The State

> then [would] base[] its share of the requirement by the wealth of a district; poorer districts [would] get a higher percentage of their educational budget from the State.
>
> [*Ibid.*]

Before SFRA was enacted, the Bacon districts appealed the Board's 2006 decision to this court. *Id.* at 612. Plaintiffs requested that the court "grant them status comparable to Abbott districts and award[ing] them the same financial resources provided to their urban counterparts . . . ." *Id.* at 615. We declined to provide such relief. Instead, we deferred to the Board's approach of individualized needs assessments, referring to interim judicial funding as "a last resort." *Id.* at 616-17. We felt it particularly appropriate to avoid a judicially-compelled funding remedy given the recent enactment of SFRA. *Id.* at 617. As a result, we "direct[ed] the Commissioner to comply with the Board's final decision and proceed forthwith to design and perform a needs assessment of each of the Bacon districts . . . and . . . to further determine whether . . . [SFRA's] remedial measures afford students in the Bacon districts" a thorough and efficient education. *Id.* at 618.

In compliance with our directive, the Department designed and implemented a comprehensive, multi-phased needs assessment in 2008. The needs assessments culminated in a report issued by

the Commissioner on September 14, 2009. The report consisted of sixteen individualized assessments of each of the Bacon districts that summarized the results of site visits, evaluated the adequacy of the facilities, evaluated the effect of SFRA on the district's funding, and provided conclusions and recommendations for each district.

As directed by the Board, the needs assessments focused on the unique issues that affected each individual district at that time. With respect to SFRA, the assessments detailed the amount of aid that each district actually received for fiscal year (FY)08-09, the anticipated level of funding for FY09-10, and how the districts intended to use the funding. Notably, the needs assessment lacked a global statement about all of the Bacon districts or whether fully funding SFRA would provide the Bacon district students with a thorough and efficient education.

Pursuant to Rule 2:4-1(b) and Bacon, supra, 398 N.J. Super. at 619, plaintiffs could have appealed the needs assessments. However, no appeal was filed.

The State reduced SFRA funding for the 2011 fiscal year. Abbott v. Burke, 206 N.J. 332, 344-46 (2011) (Abbott XXI). On September 2, 2011, the districts that had appealed the Board's decision to this court filed a motion to enforce litigants' rights pursuant to Rule 1:10-3, seeking an order directing that

the Bacon districts receive full funding under SFRA. In a January 12, 2012 order, we denied the motion because "[t]he specific relief requested on this motion to enforce litigant's rights . . . [was] neither encompassed nor contemplated in our [previous] decision . . . ." We further stated:

> To the extent movants' instant application seeks redress from the September 14, 2009 final administrative decisions of the Commissioner . . . as inconsistent with, or violative of, the Bacon holding, their recourse was a direct appeal therefrom . . . . To the extent movants seek[] to enforce, or compel compliance with, any aspect of the September 14, 2009 administrative agency determinations, their recourse is by way of summary proceeding pursuant to Rule 4:67-6.[3]

Plaintiffs took no further action until approximately September 8, 2014 when fifteen of the original twenty Bacon districts filed a verified complaint and order to show cause under Rule 4:67-6 in the Law Division. Plaintiffs framed the complaint as:

> an action to enforce final determinations by [the Department] . . . that the funding and high quality preschool provided by [SFRA], along with facilities improvements and other measures, will afford students in [Bacon] districts a thorough and efficient education . . . remediating the constitutional violation found by [the Board] and upheld by

---

[3] On May 7, 2012, the Supreme Court denied plaintiffs' petition for certification from this order. Bacon v. N.J. State Dep't of Educ., 210 N.J. 218 (2012).

the Superior Court, Appellate Division
. . . .

The relief sought by plaintiffs was broad. Plaintiffs requested an order directing the Department to (1) calculate the aid that would be provided to the Bacon districts under SFRA for the 2014-15 school year and subsequent years, send those calculations to the Legislature, "and seek supplemental appropriations as may be necessary to ensure the provision of necessary funding"; (2) calculate the preschool aid that the Bacon districts would receive under SFRA to allow them "to implement high quality preschool for all three- and four-year olds . . . no later than the 2019-20 school year"; (3) "[d]evelop and implement district-specific plans for facilities improvements and financing as may be necessary and consistent with the Educational Facilities Construction and Financing Act (EFCFA), N.J.S.A. 18A:7G-1 et seq., commencing in the 2015-16 school year"; (4) "[u]ndertake such other district-specific remedial measures as identified in the 2009 assessments or as otherwise necessary to ensure the effective and efficient use of funds in the districts' budgets;" (5) "[a]ward attorneys' fees to [plaintiffs] pursuant to N.J.S.A. 10:6-2[(f)]"; and (6) grant plaintiffs "[s]uch other relief as the [c]ourt may deem appropriate and necessary to ensure remediation of the constitutional violation found in this litigation."

On November 7, 2014, the Department filed a motion to dismiss the complaint for failure to state a claim. The trial judge granted the Department's motion on December 15, 2014.

In her oral decision, the judge focused on whether plaintiffs could use a Rule 4:67-6 summary proceeding to obtain their requested relief. She characterized plaintiffs' requested relief as "sweeping," and expressed concern about the limited record in this case compared to the records before the Supreme Court in the Abbott cases, specifically Abbott XXI.

With respect to the procedural issue, the judge noted that Rule 4:67-6 is a "very narrow rule" that was "never intended to supplant other jurisdictional exercises by [S]tate agencies." Specifically, the judge highlighted that "there was never any finding as to what level of funding under SFRA was essential to provide a [thorough and efficient education] in [the Bacon] districts" in the 2009 needs assessments. The judge further noted that the needs assessments lacked "directory language," an "omnibus order," or a global conclusion "that full funding of SFRA is necessary for a thorough and efficient education in each one of the Bacon districts." As a result, the judge determined that a summary proceeding under Rule 4:67-6 was not an appropriate vehicle to obtain plaintiffs' requested relief and

granted the Department's motion to dismiss. This appeal followed.

II.

We employ a plenary standard of review over a trial court's decision to grant a Rule 4:6-2(e) motion to dismiss for failure to state a claim upon which relief can be granted. Rezem Family Associates, L.P. v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div.), certif. denied, 208 N.J. 366 (2011). The narrow issue presented in this case is whether plaintiffs properly brought this action under Rule 4:67-6(a)(2). For the following reasons, we conclude they did not and that therefore the trial judge properly dismissed plaintiffs' complaint.

Under Rule 4:67-6, an administrative agency or a non-agency party can institute a summary proceeding in Superior Court to enforce an agency order. If the plaintiff is a non-agency party, then the rule applies to "all such enforcement actions brought by a party to the administrative proceeding in whose favor a written order or determination was entered affording that party specific relief." R. 4:67-6(a)(2). (emphasis added). Rule 4:67-6 exists "to provide judicial remedies in aid of agency orders where necessary." In re A-1 Jersey Moving & Storage, Inc., 309 N.J. Super. 33, 40 (App. Div. 1998). Additionally, parties cannot challenge the validity of an

administrative order collaterally in a Rule 4:67-6 proceeding. State Dep't of Envtl. Prot. v. Mazza & Sons, Inc., 406 N.J. Super. 13, 23 (App. Div. 2009).

We have observed that Rule 4:67-6 enforcement actions are analogous to "a motion for enforcement of litigant's rights under Rule 1:10-3 in a judicial proceeding." Mazza, supra, 406 N.J. Super. at 29 (citing State Farm Mut. Auto. Ins. Co. v. State of N.J., Dep't of Pub. Advocate, 118 N.J. 336, 344 (1990)). "The scope of relief in a motion in aid of litigants' rights is limited to remediation of the violation of a court order." Abbott XXI, supra, 206 N.J. at 371. Because Rule 4:67-6 is the administrative counterpart to Rule 1:10-3, the scope of relief that can be afforded to a party instituting a summary enforcement action is similarly limited.

To be successful in pursuing a summary action under Rule 6:67-6, a litigant must show that there is a "specific and unequivocal" order in place. Abbott v. Burke, 170 N.J. 537, 565 (2002) (Abbott VII) (LaVecchia, J., concurring in part and dissenting in part). The order must afford the enforcing party "specific relief." R. 4:67-6(a)(2). The litigant must also show that the State agency "has failed to comply with the order and that the court's assistance is necessary to secure compliance." Mazza, supra, 406 N.J. Super. at 29.

Applying these principles, we conclude that plaintiffs' complaint failed to state a claim upon which relief could be granted in a summary proceeding under Rule 4:67-6(a)(2). No "written order or determination" was entered in their favor that afforded them the "specific relief" they sought in their complaint.

In their complaint, plaintiffs described the individual September 14, 2009 needs assessments as "final determinations" by the Department

> that the funding and high quality preschool provided by [SFRA], along with facilities improvements and other measures, will afford students in [the Bacon] districts a thorough and efficient education . . . thereby remediating the constitutional violation found by [the Board] and upheld by the Superior Court, Appellate Division . . . .

However, the structure of the needs assessments themselves belie plaintiffs' arguments. The needs assessments consist of sixteen distinct reports that focus on sixteen individual districts. There is no overall report that draws conclusions about the state of the Bacon districts as a group. To the contrary, as the Board directed, the needs assessments attempt to identify the unique issues that each district faced back in 2009.

The following examples illustrate the point. In the Lawrence School District Needs Assessment, the Department focused on the issues presented by that district's small size

and recommended that the district pursue regionalization. On the other hand, the Lakewood School District Needs Assessment addressed the effect that the district's policy of courtesy busing non-public school students had on its finances and recommended that the policy be reconsidered. In the Buena Regional Needs Assessment, the Department stated that the district "must address the high personnel costs and loss of productivity that results from teachers spending so little time on instructional activities . . . ." The needs assessments for the remaining districts set forth other district-specific recommendations.

In spite of the fact that the sixteen needs assessments sought individualized solutions to each district's unique issues, plaintiffs requested sweeping, identical relief for all of the Bacon districts. It is undisputed that the needs assessments evaluated the effect of SFRA. However, plaintiffs mischaracterize the import of those recommendations. In some of the assessments, the Department identified that SFRA funding would have a positive effect on the district. For example, in the Lawrence School District Assessment, the Department noted that:

> although the SFRA and complementary legislation . . . provide the tools that will permit [the district] to improve educational opportunities for its students

A-2452-14T1

> and address its identified needs, the
> extremely small size of the school district
> poses significant challenges . . . .
> Regionalization . . . will be critical to
> addressing those challenges in this
> district.

On appeal, plaintiffs attempt to extrapolate this statement to apply to all the Bacon districts. However, the Department did not reach similar conclusions for all of the Bacon districts. Thus, there was no "specific order" that could be enforced for all of the Bacon districts.

In the needs assessments, the Department's final conclusions can be roughly grouped into three general categories: (1) SFRA funding will continue to improve educational opportunities; (2) SFRA funding will continue to improve educational opportunities but regionalization may be necessary; or (3) the district needs to better utilize available funds. The recommendations of the needs assessments follow the Board's original conclusion that the Bacon districts have different needs and will ultimately require different solutions than the Abbott districts.

Significantly, none of the needs assessments concluded that fully funding the SFRA is necessary to ensure that students in the Bacon districts receive a thorough and efficient education. The needs assessments do not require the Department or the Legislature to fully fund the districts under SFRA, or institute

specific pre-school programs or building projects in the districts.

Plaintiffs argue that the needs assessments are enforceable because in Bacon, supra, 398 N.J. Super. at 618, we instructed the Department "to further determine whether, in light of the proven educational deficits already found by the Board, the [SFRA's] remedial measures afford students in the Bacon districts the thorough and efficient education to which they are constitutionally entitled." According to plaintiffs, because the Department was instructed on remand to use the needs assessments to determine whether SFRA would remediate the constitutional violation, the conclusions and recommendations in the needs assessments are enforceable as an agency order.

However, as noted above, the needs assessments lack clear findings about the remedial effect of the SFRA on the constitutional violations that the Board originally identified. If the Department failed to comply with our directive in Bacon, supra, that the Commissioner determine whether SFRA provided the Bacon districts with a thorough and efficient education, plaintiffs' appropriate recourse was an appeal of the needs assessments. While plaintiffs assert that "[i]n plain and unequivocal language, [the Department] determined that the SFRA provides adequate funding . . . to ensure the Bacon students

[receive] a thorough and efficient education," that language is not found in the needs assessments. The plain language of the needs assessments cannot be construed as an administrative order in plaintiffs' favor entitling them to full SFRA funding or any of the broad relief sought in their complaint.

Furthermore, the needs assessments contain no directives. As noted by the trial judge, the needs assessments lack an "omnibus order." In a Rule 4:67-6 proceeding, the trial court's powers are strictly limited to enforcement of an order. See Mazza, supra 406 N.J. Super. at 23 (trial court cannot rule on the validity of an agency order in a Rule 4:67-6 proceeding). Without any directives or an omnibus order, there was nothing for the trial court to enforce and plaintiffs' complaint was therefore properly dismissed.

Plaintiffs make two additional arguments. First, they assert their complaint was properly filed under Rule 4:67-6 because, in our January 12, 2012 order, we "instuct[ed]" them to proceed in this fashion. We disagree. Contrary to plaintiffs' assertion, the January 12, 2012 order was not an "instruction" by this court to file a summary action under Rule 4:67-6, nor a guarantee that any such action, if pursued, would be successful. Instead, we simply made clear that plaintiffs' motion for an order in aid of litigants' rights lacked merit.

Plaintiffs also argue for the first time in their reply brief that we should exercise our original jurisdiction in this matter pursuant to Rule 2:10-5; declare that the Department has violated New Jersey's Constitution by failing to ensure that plaintiffs all receive full SFRA funding; and implement specific remedies concerning future funding. We again disagree.

We generally decline to consider arguments raised for the first time in a reply brief. L.J. Zucca, Inc. v. Allen Bros. Wholesale Distribs. Inc., 434 N.J. Super. 60, 87 (App. Div. 2014) (citing Borough of Berlin v. Remington & Vernick Eng'gs, 337 N.J. Super. 590, 596 (App. Div.), certif. denied, 168 N.J. 294 (2001)), certif. denied, 218 N.J. 273 (2014). By failing to raise their original jurisdiction argument in their initial brief, plaintiffs have waived this contention.

Moreover, we exercise our original factfinding authority under Rule 2:10-5 only "with great frugality and in none but a case free of doubt." Tomaino v. Burman, 364 N.J. Super. 224, 234-35 (App. Div. 2003) (quoting In re Boardwalk Regency Corp. Casino License Application, 180 N.J. Super. 324, 334 (App. Div. 1981), modified on other grounds, 90 N.J. 361 (1982)), (internal quotation marks omitted), certif. denied, 179 N.J. 310 (2004). This is not such a case. The record is wholly inadequate to allow us to exercise our original fact-finding authority to

review plaintiffs' claim that they are entitled to specific levels of funding under SFRA.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2452-14T1