**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0402-21

1401 OCEAN LLC,
ASTOR HOTEL, 465 LLC,
MARCEL 201 LLC,
PLAZA EAST HOTEL LLC,
JENNAS LLC, ALI BABA
HOTEL CORP.,
63 WEST REALTY CORP.
and 63 WEST LLC,

     Plaintiffs-Appellants,

v.

ZURICH AMERICAN
INSURANCE COMPANY,

     Defendant-Respondent.

_____

Argued January 25, 2023 – Decided February 12, 2024

Before Judges Accurso, Vernoia and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3315-20.

Scott P. DeVries of the New York bar, admitted pro hac vice, argued the cause for appellants (Hunton Andrews Kurth, LLP, attorneys; Walter J. Andrews, of the New

York bar, Kevin Vincent Small and Scott P. DeVries, on the briefs).

David R. Roth (Wiggin and Dana, LLP) of the Connecticut bar, admitted pro hac vice, argued the cause for respondent (Wiggin and Dana, LLP, attorneys; Michael Menapace, of the Connecticut bar, admitted pro hac vice, and Susan Marie Kennedy, on the brief).

The opinion of the court was delivered by

VERNOIA, J.A.D.

In this breach of contract and declaratory judgment[1] action against defendant Zurich American Insurance Company (defendant), plaintiffs 1401 Ocean LLC, Astor Hotel 465 LLC, Marcel 201 LLC, Plaza East Hotel LLC, Jennas LLC, Ali Baba Hotel Corporation, 63 West Realty Corporation, and 63 West LLC (collectively, "plaintiffs"), seek coverage for losses allegedly incurred as the result of the presence of COVID-19 at their insured premises and

---

[1] Plaintiffs invoke 28 U.S.C. § 2201 in their complaint, rather than the New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-50 to -62, in requesting the court issue a "declaration of the parties' rights and duties[.]" The "general rule that state and federal courts share concurrent jurisdiction over cases arising from federal statutes unless Congress determines otherwise" applies here because we find 28 U.S.C. § 2201 does not "'affirmatively divest State courts of their presumptively concurrent jurisdiction.'" J.H.R. v. Bd. of Educ. of Twp. of E. Brunswick, 308 N.J. Super. 100, 115-16 (App. Div. 1998) (quoting Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 820, 823 (1990)).

related Executive Orders (EOs)[2] issued in response to the COVID-19 pandemic. Plaintiffs appeal from an August 23, 2021 order dismissing their first amended complaint with prejudice for failure to state a claim for coverage under their commercial insurance policy (the policy) with defendant. Plaintiffs argue the court erred by dismissing their complaint because they sufficiently pled allegations of direct physical loss of or damage to their insured properties, resulting from COVID-19 and the related EOs, under several policy provisions. Unpersuaded by plaintiffs' arguments, we affirm.

I.

Plaintiffs are a group of eight corporations and LLCs operating residential rental properties and hotels under the umbrella of Amsterdam Hospitality Group, which is the named insured under plaintiffs' "all-risk" insurance policy. Seven of the corporate entities operate properties in New York and one operates a hotel in New Jersey.

---

[2] In their first amended complaint, plaintiffs cite to the following EOs that were issued in response to the COVID-19 pandemic: a March 16, 2020 EO issued by New York City Mayor Bill DeBlasio which plaintiffs assert required residents to "shelter in place or remain in their homes unless performing 'essential' activities"; New York Governor Andrew Cuomo's EO 205 which "severely restrict[ed] travel to the State of New York"; and New Jersey Governor Phil Murphy's EO 107 "temporarily closing non-essential businesses."

A-0402-21

Plaintiffs' policy with defendant had an effective date of October 28, 2019, and provided up to $150 million in coverage, subject to certain limits, in exchange for a nearly $600,000 premium payment. The policy insures "against direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property, at an Insured Location . . . subject to the terms, conditions[,] and exclusions stated in th[e] [p]olicy." The policy defines "Covered Cause of Loss" as "[a]ll risks of direct physical loss of or damage from any cause unless excluded."

Plaintiffs allege they are entitled to business interruption coverage under the policy's Time Element and Special Coverages options. The Time Element coverage option insures business interruption losses sustained as a result of a "necessary [s]uspension . . . due to direct physical loss of or damage to [p]roperty." The Special Coverages option's Civil or Military Authority provision extends business interruption coverage to losses resulting from the necessary suspension of plaintiffs' business activities at an insured location if the suspension is caused by an order of civil or military authority that prohibits access to the location. To qualify for coverage under the Civil or Military Authority provision, the order "must result from a civil authority's response to direct physical loss of or damage caused by a Covered Cause of Loss to property

4

not owned, occupied, leased or rented by the Insured . . . and located within" one mile of insured property.

The Special Coverages provision also includes a Contingent Time Element option that covers losses, including business income losses, incurred during a "[p]eriod of [l]iability" that "directly result[s] from the necessary [s]uspension of the Insured's business activities at an Insured Location if the [s]uspension results from direct physical loss or damage caused by a Covered Cause of Loss to [p]roperty." The Contingent Time Element coverage option differs from the Time Element option in that the predicate suspension under the former must "result from direct physical loss of or damage caused by a Covered Cause of Loss to Property . . . at Direct Dependent Time Element Locations, Indirect Time Element Locations, and Attraction Properties. . . ."

Under the policy, "Direct Dependent Time Element Locations" are locations of direct suppliers, customers, or service providers. "Indirect Dependent Time Element Locations" are locations of suppliers, customers, or service providers of Direct Dependent Time Element Locations. And "Attraction Properties" are "propert[ies] within [one mile] of an Insured Location that attract[] customers to the Insured's business." The policy also includes an Ingress/Egress coverage option that applies when there is an

5

A-0402-21

interruption of business activities because ingress or egress at the insured property "is prevented by physical obstruction due to direct physical loss or damage caused by a Covered Cause of Loss" to a third-party's property within one mile of plaintiffs' insured properties.

The policy also includes exclusions. In pertinent part, the policy excludes coverage for "[c]ontamination, and any cost due to [c]ontamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy . . . ." The policy defines contamination as "[a]ny condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, [f]ungus, mold[,] or mildew."

The policy additionally excludes from coverage risks related to the possible loss of use of covered property. For example, the policy excludes "[l]oss or damage arising from the enforcement of any law, ordinance, regulation[,] or rule regulating or restricting the . . . occupancy, operation[,] or other use . . . of any property." The policy also excludes "[l]oss or damage arising from delay, loss of market, or loss of use" and "[l]oss or damage resulting

A-0402-21

from the Insured's suspension of business activities, except to the extent provided by th[e] [p]olicy[.]"

The policy includes a series of endorsements, some of which are state specific. Each endorsement provides that, except for specific provisions stating otherwise, that "[a]ll other terms, conditions[,] and limitations of th[e] [p]olicy remain unchanged." One such endorsement, which is specific to Louisiana, replaces the policy's definition of contamination with another definition that excludes "pathogen or pathogenic organism, bacteria, virus, [and] disease causing or illness causing agent" from its definition.

In their first amended complaint, plaintiffs allege the presence of COVID-19 at their insured premises caused business losses for which they are entitled to coverage under the policy. Plaintiffs allege it was "statistically indisputable that COVID-19 is present and/or was present at [their] locations" and nearby locations given "the prevalence of COVID-19 cases in the New York and New Jersey region[s.]" Plaintiffs allege that they closed their locations in response to the EOs that were issued following the start of the COVID-19 pandemic. They also assert that the presence of COVID-19 at properties they did not own

 A-0402-21

or occupy, that are located within five miles of the insured premises, led to issuance of the EOs that caused their business losses.[3]

Following argument on defendant's motion to dismiss, the motion court found plaintiffs failed to allege sufficient facts supporting a finding of coverage under the policy. The court explained the alleged presence of COVID-19 at the insured premises did not constitute a direct physical loss of or damage to the insured property such that plaintiffs are entitled to coverage under any of the policy's various provisions. The court also determined the EOs did not prohibit access to the insured property and that any limit on access to the property resulting from the EOs did not result from a direct physical loss of or damage to the insured premises within the policy's plain terms. The court further found no coverage under the Civil or Military Authority provisions based on the EOs, again finding the presence of COVID-19 at locations within one mile of an insured premises did not constitute direct physical loss of or damage to those

---

[3] Although plaintiffs' complaint alleges they suffered losses due to the presence of COVID-19 at properties located within five miles of their various insured premises, as we explain, certain policy provisions afford coverage based on direct physical loss of or damage to uninsured properties located within one mile of plaintiffs' insured properties. In other words, there is no relevant provision of the policy that provides coverage for losses suffered as the result of alleged direct physical loss or damage to uninsured properties located within five miles of plaintiffs' insured properties.

A-0402-21

locations such as to require coverage. The motion court also determined the policy's Contamination Exclusion barred coverage for any losses incurred attributable to contamination due to the presence of a virus—COVID-19—that rendered the property unsafe for use or occupancy.

The court entered an order dismissing plaintiffs' complaint with prejudice. This appeal followed.

II.

As a threshold matter, we address defendant's argument that New York law should govern the determination of the issues on appeal to the extent it differs from applicable New Jersey law. The argument is founded on the contention that New Jersey's only connection to the issues in dispute is the presence of one plaintiff and its insured property in New Jersey and that New York has a greater interest in the matter because the remaining plaintiffs and their insured properties are in New York.

In making the argument, defendant acknowledges there is no actual conflict between the applicable laws of the respective states such that a choice of law analysis is required. See Cont'l Ins. Co. v. Honeywell Int'l, Inc., 234 N.J. 23, 46 (2018) (explaining where there is no "actual conflict between the laws of the states with interests in the litigation" "then the choice-of-law question is

inconsequential, and the forum state applies its own law to resolve the disputed issue" (citations omitted)). Plaintiffs do not disagree. And, based on our consideration of the applicable legal principles, and finding no actual conflict between New York and New Jersey law pertinent to a disposition of the issues present on appeal, we apply the law of the forum state, New Jersey. Ibid.

We review the motion court's dismissal decision de novo. Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019). Our review is plenary, Bacon v. N.J. State Dep't of Educ., 443 N.J. Super. 24, 33 (App. Div. 2015), meaning we owe no deference to the motion court's legal or factual conclusions supporting the dismissal order, Rezem Fam. Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011).

A claim for relief must "contain a statement of facts on which the claim is based" which must "show[] that the pleader is entitled to relief[.]" R. 4:5-2. "In deciding whether to grant dismissal, the complaint's allegations are accepted as true and with all favorable inferences accorded to plaintiff." MAC Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1,16 (App. Div. 2022) (citing Watson v. N.J. Dep't of Treasury, 453 N.J. Super. 42, 47 (App. Div. 2017)). Therefore, to survive dismissal under Rule 4:6-2(e), the complaint must

A-0402-21

allege facts sufficient to support a claim upon which relief can be granted.  See R. 4:6-2(e).  If a complaint sets forth conclusory allegations, and, in doing so, fails to present the essential facts required by the claimed cause of action, the complaint will not survive a motion to dismiss.  See Neuwirth v. State, 476 N.J. Super. 377, 390 (App. Div. 2023).

We limit our inquiry "to examining the legal sufficiency of the facts alleged on the face of the complaint[,]" Green v. Morgan Props., 215 N.J. 431, 451 (2013) (citation omitted), and whether the allegations, if proven, "would constitute a valid cause of action[,]" Leon v. Rite Aid Corp., 340 N.J. Super. 462, 472 (App. Div. 2001).  Thus, dismissal is warranted where the complaint's allegations are "palpably insufficient to support a claim upon which relief can be granted[,]" Rieder v. State Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987), or if "discovery will not give rise to such a claim," Dimitrakopoulos, 237 N.J. at 107.  That is the case here.

When "interpreting insurance contracts, we first examine the plain language of the policy and, if the terms are clear, they 'are to be given their plain, ordinary meaning.'" Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (quoting Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001)).  The policy must "be enforced as written when its terms are clear" so the "expectations of the parties

will be fulfilled." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010) (citations omitted).

We nevertheless recognize that insurance policies are generally "contract[s] of adhesion between parties who are not equally situated." Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co., 229 N.J. 196, 215 (2017) (quoting Nav-Its, Inc. v. Selective Ins. Co. of Am., 183 N.J. 110, 118 (2005) (alteration in original)). Thus, where an insurance policy is ambiguous, courts construe the terms in favor of the insured. MAC Prop. Grp. LLC, 473 N.J. Super. at 18 (citation omitted). A genuine ambiguity arises when "'the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" Birmingham v. Travelers N.J. Ins. Co., 475 N.J. Super. 246, 256 (App. Div. 2023) (quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979)). Or, "when 'the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinction, is obscured by fine print, or requires strenuous study to comprehend[,]'" ibid. (quoting Zacarias, 168 N.J. at 601).

"[E]xclusions in insurance contracts 'are presumptively valid and will be given effect if'" they are "'specific, plain, clear, prominent, and not contrary to public policy.'" MAC Prop. Grp. LLC, 473 N.J. Super. at 35 (quoting Princeton

Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997)). "'[T]he basic notion [is] that the premium paid by the insured does not buy coverage for all . . . damage but only for that type of damage provided for in the policy.'" Id. at 19 (quoting Weedo, 81 N.J. at 237). Limitations on coverage "designed 'to restrict and shape the coverage otherwise afforded'" are therefore permissible. Ibid. (quoting Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 102 (2009)).

Plaintiffs argue they are entitled to coverage under various coverage options of their policy—all of which are contingent on a finding plaintiffs' losses were caused by, or otherwise attributable to, direct physical loss of or damage to either covered property, another's property within one mile of covered property, or property at or within 1,000 feet of covered property, which plaintiffs allege occurred in part due to the physical presence of COVID-19 at their properties and the EOs.

Plaintiffs assert "COVID-19 was physically present in the air and on the walls, floors, and every other surface exposed to human contact at each and every one of its locations." Plaintiffs allege in the complaint that "[a]ccording to a study documented in the New England Journal of Medicine, COVID-19 was detectable for up to three hours in aerosols, up to twenty-four hours on cardboard, and up to seventy-two hours on plastic and stainless steel[,]" meaning

"individuals can become infected with COVID-19 through indirect contact with surfaces or objects used by an infected person, whether they are symptomatic or not." Plaintiffs further allege "[t]here may be instances where COVID-19 was present onsite at an insured location including with respect to a customer, but the individual was pre-symptomatic, such that [plaintiffs] w[ere] not aware of the presence of the virus."

In other words, plaintiffs' claims for coverage are founded on the presence of COVID-19 on their insured premises. And, in recognition of the plain language of the various policy provisions—including the "Attraction Properties," "Direct Dependent Time Element Locations," and "Indirect Dependent Time Element Locations" provisions—under which they claim coverage, plaintiffs further allege that the presence of COVID-19 caused direct physical loss of and damage to the properties, resulting in the "necessary slowdown" or cessation of plaintiffs' business activities.

In MAC Property Group LLC, we rejected virtually identical arguments—regarding virtually identical policy provisions—as those asserted by plaintiffs here. 473 N.J. Super at 19-27. We considered an insurance policy that provided business income loss coverage where the plaintiff had alleged it suffered losses due to "direct physical loss of or damage to" covered property resulting in a

14

period of suspension of business operations during the period of restoration of the property.[4]  Id. at 19-20.  We held that business losses suffered as the result of EOs barring or curtailing the plaintiff's operations in response to the COVID-19 pandemic did not constitute "direct physical loss of or damage to" the insured property such as to permit or require coverage.  Id. at 10.  We explained the phrase "direct physical loss of or damage to" property under the policy was neither ambiguous nor "so confusing that average policyholders . . . could not understand that coverage extended only to instances where the insured property has suffered a detrimental physical alteration of some kind, or there was a physical loss of the insured property."  Id. at 21-22.

We also explained in MAC Property Group LLC that "scores of federal and state appellate-level courts . . . have addressed" claims for coverage for losses due to EOs limiting or curtailing business operations due to COVID-19 under insurance policies providing coverage for "direct physical loss of or damage" to insured property, and the "overwhelming majority of them have" dismissed the complaints "because the losses were not due to physical loss or

---

[4]  Time Element coverage is frequently referred to as, and considered interchangeable with, "Business Interruption" coverage.  See e.g., AC Ocean Walk, LLC v. Am. Guar. & Liab. Ins. Co., ___ N.J. ___, ___ (2024) (slip op. at 29-30) (collecting cases).

15                                                          A-0402-21

damage to their insured premises." Id. at 26-27; see also Verveine Corp. v. Strathmore Ins. Co, 489 Mass. 534, 542 (2022) (noting that "[e]very appellate court that has been asked to review COVID-19 insurance claims has agreed" that "'direct physical loss of or damage to' property requires some 'distinct, demonstrable, physical alteration of the property'"); see, e.g., Wilson v. USI Ins. Serv. LLC, 57 F.4th 131, 142-43 (3d Cir. 2023) (applying New Jersey Law and finding COVID-19 executive orders limiting or curtailing operation of an insured's business did not result in a "direct physical loss of or damage" to the insured's property because the orders were not issued in response to physical damage to the property and "[t]he propert[y] could certainly be used and inhabited, just not in the way the business[] would have liked").

Applying what we determined was the plain and ordinary meaning of the phrase "direct physical loss of or damage to property," we also explained that because New Jersey has "adopted a broad notion of the term 'physical[,]'" when the word is paired with another word, e.g. "'physical injury,'" "the resulting term means a 'detrimental alteration[],' or 'damage or harm to the physical condition of a thing.'" MAC Prop. Grp. LLC, 473 N.J. Super. at 20. We concluded the plaintiffs' claimed losses allegedly resulting from the presence of COVID-19 at the insured premises were not covered losses arising from a direct physical loss

of or damage to their property within the plain and unambiguous meaning of the policy. Id. at 23. More recently, in AC Ocean Walk, LLC v. American Guarantee and Liability Insurance Company, our Supreme Court affirmed the dismissal of a complaint under Rule 4:6-2(e) based on its determination that business losses claimed as the result of the presence of COVID-19 are not covered under an insurance policy that provides coverage for "direct physical loss or damage to" the insured's property. AC Ocean Walk, LLC, slip op. at 25-29.

Thus, for there to be coverage under the policy, plaintiffs' alleged losses "must be a 'direct physical' loss, clearly requiring a direct, physical deprivation of possession," and a curtailment of the use of a premises "'without any physical alteration [to the premises] to accompany it'" does not amount to such. MAC Prop. Grp. LLC, 473 N.J. Super. at 26 (alteration in original) (quoting Verveine Corp, 489 Mass. at 545); see also Wilson, 57 F.4th at 142-43. Accordingly, plaintiffs' allegation that COVID-19's presence on its properties, and other properties located within one mile of insured premises, caused "physical alteration of the integrity of the [properties]" and physical loss and damage by "impairing the value, usefulness, [and] normal function of the [properties][,]" is

17

insufficient to support their claimed entitlement to coverage under the policy. AC Ocean Walk, LLC, slip op. at 25-29.

Simply put, the facts as alleged by plaintiffs do not support a claim that they suffered physical damage to equipment or a physical alteration or damage to an insured property such that plaintiffs suffered a direct physical loss of or damage to the insured properties under the plain language of the policy. See ibid.; Verveine Corp., 489 Mass. at 544 ("Evanescent presence of a harmful airborne substance [like COVID-19] that will quickly dissipate on its own, or surface-level contamination, that can be removed by simple cleaning, does not physically alter or affect property"). Thus, plaintiffs' complaint does not allege facts that if proven, "would constitute a valid cause of action" for coverage under the policy. Leon, 340 N.J. Super. at 472.

Additionally, in plaintiffs' complaint they do not allege—nor could they—that the EOs complained of "selectively closed" their premises "due to damage to nearby property" as required for the Special Coverages, Time Ingress/Egress, and Civil or Military Authority provisions to apply. Coverage under those provisions requires a direct physical loss of or damage to properties and, again, plaintiffs allege only the presence of COVID-19 as the basis for their coverage claims. The presence of COVID-19 does not result in the requisite direct

18

physical loss of or damage to property for coverage under the policy's plain language. See AC Ocean Walk, LLC, slip op. at 25-29.

Moreover, the policy plainly excludes coverage for suspensions of use of the premises resulting from "enforcement of any law, ordinance, regulation[,] or rule regulating or restricting the . . . occupancy, operation[,] or other use . . . of any property." The policy also excludes "[l]oss or damage arising from delay, loss of market, or loss of use" and "[l]oss or damage resulting from the [i]nsured's suspension of business activities, except to the extent provided by th[e] [p]olicy" which, as we have explained, otherwise does not provide coverage for losses attributable to the effect of the EOs.

Such exclusions are presumptively valid. See MAC Prop. Grp. LLC, 473 N.J. Super. at 35. Thus, on plaintiffs' claims for coverage for losses they attribute to the suspension of business operations effected by EOs issued to curb COVID-19's spread, we affirm the motion court's dismissal of the first amended complaint seeking coverage under the Time Element, Civil Authority or Military Authority, Contingent Time Element, and Ingress/Egress coverage options.

We acknowledge plaintiffs additionally argue the policy's Contamination Exclusion does not apply to COVID-19 and is therefore unenforceable under the facts as they allege them. We find it unnecessary to address the claim, because

A-0402-21

plaintiffs otherwise failed to sufficiently allege an entitlement to coverage under the policy provisions under which they sought coverage. Stated differently, we need not address the applicability or the validity of the Contamination Exclusion because plaintiffs failed to allege facts showing an entitlement to coverage in the first instance.

To the extent we have not expressly addressed any of plaintiffs' remaining arguments, we find they are without sufficient merit to warrant written discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0402-21