# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1066-23

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

 Plaintiff-Respondent,

v.

L.M.G.,

 Defendant-Appellant,

and

A.S.,

 Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF J.V.G.,
a minor.

_____

Argued October 30, 2024 – Decided November 21, 2024

Before Judges Mayer, Rose and Puglisi.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FG-01-0014-23.

Beatrix W. Shear, Designated Counsel, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Beatrix W. Shear, on the briefs).

Nicholas Dolinsky, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Mary L. Harpster, Deputy Attorney General, on the brief).

Neha Gogate, Assistant Deputy Public Defender, argued the cause for minor (Jennifer Nicole Sellitti, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; Neha Gogate, of counsel and on the brief).

PER CURIAM

Defendant L.M.G.,[1] the biological mother of J.V.G. (Jaden), appeals from the October 16, 2023 judgment of guardianship terminating her parental rights to the child. Jaden's biological father, A.S., does not appeal the order terminating his parental rights. The Law Guardian supports the termination on appeal as it did before the trial court.

---

[1] We refer to the parties, the child and the resource parent by initials or pseudonyms to protect their privacy. R. 1:38-3(d)(12).

2

A-1066-23

On appeal, defendant raises three arguments: 1) the New Jersey Division of Child Protection and Permanency did not prove prong four[2] of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence; 2) she was not provided legal representation at trial; and 3) the guardianship complaint was not filed within six months of a summary finding as required by N.J.S.A. 30:4C-12. None of these issues were raised below, and we ordinarily would disregard defendant's claim of an error or omission "unless it is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. However, we are mindful of defendant's arguments with regard to her legal representation during trial and therefore address the substance of these claims.

Based on our review of the record and applicable law, we are satisfied that the evidence in favor of the guardianship petition overwhelmingly supports the trial court's decision to terminate defendant's parental rights. Accordingly, we affirm substantially for the reasons set forth by the trial court in its thorough oral decision rendered on October 16, 2023.

---

[2] Although defendant states she is not conceding prongs one, two and three, she did not address those issues in her merits brief. Issues not briefed are deemed waived. See State v. Shangzen Huang, 461 N.J. Super. 119, 125 (App. Div. 2018).

We will not recite in detail the history of the Division's interactions with defendant and Jaden. Instead, we incorporate by reference the factual findings and legal conclusions contained in the trial court's decision. We add the following comments.

The guardianship action was tried before the court over the course of two days, during which defendant did not appear. The Division presented evidence that established, by clear and convincing evidence, all four statutory prongs outlined in N.J.S.A. 30:4C-15.1(a). In its thorough decision, the trial court concluded that termination of defendant's parental rights was in Jaden's best interests, and fully explained the basis for its determinations under the statutory prongs.

The scope of our review of a trial court's decision to terminate parental rights is limited. N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448-49 (2012). "Because of the family courts' special jurisdiction and expertise in family matters," we accord deference to the trial court's fact-finding and the conclusions that flow logically from those findings of fact. Cesare v. Cesare, 154 N.J. 394, 413 (1998). We are bound by those factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007) (citations omitted).

The trial court's opinions track the requirements of N.J.S.A. 30:4C-15.1(a), and are supported by substantial and credible evidence in the record. F.M., 211 N.J. at 448-49. After appraising the record in light of the findings of fact contained in the court's decision, we find nothing that requires our intervention. The trial court carefully reviewed the relevant evidence and fully explained its reasons in a logical and forthright fashion.

We first address defendant's argument that the trial court erred in concluding the Division satisfied the fourth statutory prong, which requires the court to determine whether termination of parental rights will not do more harm than good to the child. N.J.S.A. 30:4C-15.1(a)(4).

N.J.S.A. 30:4C-15.1(a)(4) "serves as a fail-safe against termination even where the remaining standards have been met." N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 609 (2007). The question is "whether a child's interest will best be served by completely terminating the child's relationship with that parent." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 108 (2008). The ultimate determination to be made under the fourth prong is "whether, after considering and balancing the two relationships, the child will suffer a greater harm from the termination of ties with [the] natural parents than

A-1066-23

from the permanent disruption of [the] relationship with [the] foster parents." In re Guardianship of K.H.O., 161 N.J. 337, 355 (1999).

In finding the Division met the fourth prong, the trial court relied on unrefuted expert testimony establishing defendant was unable to provide consistency and stability to Jaden, now or in the foreseeable future. The testimony of the child's resource parent, J.G. (Jessica) and the Division caseworker also amply demonstrated that Jessica was committed to adopting Jaden in order to provide him with the permanency he so desperately needed in his life.

Nevertheless, defendant argues the Division did not prove by clear and convincing evidence Jessica has provided or will provide Jaden with "the quality time; a calm, unperturbed lifestyle; financial security; adequate housing; and the attention to his medical issues and developmental delays that he requires." Defendant claims that because Jessica is single, has two other children, and works two jobs, she cannot overcome or mitigate Jaden's "adaptive, personal[,] social, communication, gross and fine motor, and cognitive delays."

Defendant further argues the Division did not prove Jessica was genuinely and fully committed to being Jaden's mother because she displayed apprehension in committing to providing permanency in the past. Finally,

defendant contends that because Jessica's adoption of Jaden would be an interracial adoption, the matter should be remanded to determine whether adoption would not do more harm than good.

Defendant's contentions in this regard are belied by the record. In determining the Division met prong four by clear and convincing evidence, the court found Jessica was

> addressing [Jaden]'s needs on a consistent basis . . . in a way that . . . shows love. That takes into account his various needs, whether they're educational, emotional, spiritual needs, especially in a situation where [Jaden] has special needs beyond the needs of what any other child may have.

The court also found Jessica "has done that consistently since 2021," which "was spelled out by [Jessica]'s testimony as to her level of commitment to being there as a permanent placement as that source of consistency for [Jaden]." The court noted Jessica testified "they have a mother/son relationship. She loves him. The whole family has a bond with him. She couldn't see herself without [Jaden]. And wouldn't want it any other way."

The trial court also afforded considerable weight to the Division's expert report and testimony, which supported a permanency plan that included termination of defendant's parental rights followed by adoption by Jessica. The expert did not express any concerns regarding Jessica's relationship status,

employment, or her care of the children, which included both daycare and night care. We are also unpersuaded by defendant's speculative contentions regarding interracial adoption; she does not point to anything in the record that would warrant our reversal.

We next address defendant's contention she was not provided trial counsel. To be clear, defendant failed to appear for either day of trial, despite receiving notice. On the first day of trial, her assigned counsel advised the court he was "unable to take a position with regard to the admission of any evidence or with regard to any testimony offered by any Division witness" in defendant's absence. When defendant failed to appear for the second day of trial, counsel reiterated this position.[3]

In support of her argument, defendant cites N.J. Div. of Youth & Fam. Servs. v. P.W.R., 410 N.J. Super. 501, 506 (App. Div. 2009). In that case, defense counsel appeared for trial but the defendant did not, and the trial court entered default. Id. at 503. Defense counsel was permitted to object to evidence and cross-examine witnesses. Id. at 504. We held default was not warranted under Rule 4:43-1 because counsel was present to defend the case and the

---

[3] In her reply brief, defendant claims the trial court had a "policy" that "FG defendants who do not appear forfeit representation by their attorneys." She did not provide any citation to the record to support this contention.

defendant's failure to appear was not a violation of court order. Id. at 506. Although we disagreed with the entry of default, we nevertheless affirmed the finding of abuse and neglect because it was supported by the evidence presented at trial. Id. at 510. P.W.R. is inapposite here, because nothing in the record indicates the trial court precluded defense counsel from objecting to evidence or cross-examining witnesses; rather, counsel decided to proceed in that manner.

Defendant also cites N.J. Div. of Child Prot. & Perm. v. S.W., 448 N.J. Super. 180 (App. Div. 2017). S.W. was an abuse and neglect proceeding in which the parties agreed to the court's finding on the papers, a process we found lacking. Id. at 192-93. Defendant emphasizes our holding that "the trial judge has the ultimate responsibility of conducting adjudicative proceedings in a manner that complies with required formality in the taking of evidence and the rendering of findings," even if the parties agree otherwise. Id. at 193. That is precisely what the judge did here.

We disagree with defendant's argument the judge should not have permitted counsel to decline to advocate for her. A judge is an impartial arbiter and cannot act as an advocate for a party, advise counsel how to represent a client or order counsel to do so. Cf. D.M.R. v. M.K.G., 467 N.J. Super. 308, 321 (App. Div. 2021) ("A judge should avoid crossing 'that fine line that

separates advocacy from impartiality. When that occurs there may be substantial prejudice to the rights of one of the litigants.'" (quoting Village of Ridgewood v. Sreel Inv. Corp., 28 N.J. 121, 132 (1958))).

While defendant does not advance an argument of ineffective assistance of counsel, we nevertheless view this issue through that lens. In N.J. Div. of Youth & Fam. Servs. v. B.R., 192 N.J. 301, 305-09, 309 (2007), our Supreme Court adopted the two-prong standard established in Strickland v. Washington, 466 U.S. 668 (1984), and State v. Fritz, 105 N.J. 42 (1987), for evaluating ineffective assistance of counsel claims in termination of parental rights matters. A defendant alleging ineffective assistance of counsel must prove:

> (1) counsel's performance must be objectively deficient—i.e., it must fall outside the broad range of professionally acceptable performance; and (2) counsel's deficient performance must prejudice the defense—i.e., there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."
>
> [B.R., 192 N.J. at 307 (quoting Strickland, 466 U.S. at 694).]

Even assuming that trial counsel's failure to object to evidence, cross-examine witnesses or make a closing argument satisfies the first prong under Strickland, defendant cannot overcome the mountain of evidence proving, by

clear and convincing evidence, that termination of her parental rights to Jaden was clearly in the child's best interest.

Lastly, we reject defendant's contention that a procedural error divested the Division of its right to bring the guardianship action.[4]  After the Division obtained custody, care and supervision of Jaden via a Dodd[5] removal in August 2021, the court made a summary finding against defendant on October 28, 2021. Because A.S. disputed paternity of Jaden, the court ordered a paternity test and set a return date of January 6, 2022 to conduct a summary hearing for A.S. and a compliance review.  The case was transferred to another judge and the date was rescheduled to January 28, 2022.

After conducting the summary hearing as to A.S. on January 28, 2022, during which defendant was present, the court entered an order setting a

---

[4]  Defendant also raises for the first time in her reply brief that the abuse and neglect proceeding was procedurally defective because it was not brought by an order to show cause as required by R. 5:12-1(b).  "We generally decline to consider arguments raised for the first time in a reply brief," Bacon v. N.J. State Dep't of Educ., 443 N.J. Super. 24, 38 (App. Div. 2015), and decline to do so here.

[5]  "A 'Dodd removal' refers to the emergency removal of a child from the home without a court order, pursuant to the Dodd Act, which, as amended, is found at N.J.S.A. 9:6-8.21 to -8.82.  The Act was authored by former Senate President Frank J. 'Pat' Dodd in 1974."  N.J. Div. of Youth & Fam. Servs. v. N.S., 412 N.J. Super. 593, 609 n.2 (App. Div. 2010).

compliance review on May 6, 2022. At the May 6, 2022 hearing, the court set the Title 30 summary and permanency hearings for July 15, 2022.

Defendant argues that because the October 28, 2021 summary finding order expired six months later pursuant to N.J.S.A. 30:4C-12, the Division no longer had care or custody of the child at the May 6, 2022 hearing. We are unpersuaded by this argument for two reasons. First, defendant failed to provide a transcript of the January 28, 2022 hearing, as required pursuant to Rule 2:5-1(g). See In re Guardianship of Dotson, 72 N.J. 112, 116-17 (1976) (noting that "ordinarily the transcript is an integral part of the record on appeal" as it "gives the reviewing court a basis for a complete and proper analysis of all the issues before it"). Thus, we do not know from the record before us whether there was any discussion about scheduling the May 2022 hearing date, an explanation of why it was set outside the six-month deadline, or a request to extend the deadline implicated by the October 2021 order.

Moreover, even if the order "expired" on April 28, 2022, the compliance hearing was conducted within eight days. This minimal delay does not offend notions of due process nor does it warrant the drastic relief sought by defendant, which would "upend a properly conducted guardianship hearing at which the

family court has fairly found that termination of parental rights is in the best interests of the children."  See F.M., 211 N.J. at 446.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1066-23